19459

The BELK DEPARTMENT STORES, Respondent, v. Frank L. TAYLOR, Sr., et al., Appellants.

(191 S. E. (2d) 144)

Messrs. Daniel R. McLeod, Atty. Gen., Joe L. Allen, Jr., and G. Lewis Argoe, Jr., Asst. Attys. Gen., of Columbia, for Appellants,

*Messrs. William L. Pope,* of *Robinson, McFadden, Moore & Pope,* Columbia, and *David M. McConnell,* Charlotte, N. C. *for Respondent,*

July 31, 1972.

LEWIS, Justice:

The issues concern the inventory value of respondent's stock of merchandise for tax purposes for the 1970 tax year, admittedly to be determined as of December 31, 1969, the end of respondent's accounting year.

The test for determing value of the inventory for taxation is the "actual value of the property taxed," Article III, Section 29, Constitution of South Carolina, which has been defined in Section 65-1648, 1962 Code Supplement, as "its true value in money which in all cases shall be held to be the price which the property would bring following reasonable exposure to the market, where both the seller and the buyer are willing, are not acting under compulsion, and are reasonably well informed as to the uses and purposes for which it is adapted and for which it is capable of being used." The duty of determining the value of inventories is placed by law upon the appellant, South Carolina Tax Commission. Section 65-1669, 1962 Code Supplement.

As required by Section 65-1647.1, 1962 Code Supplement, respondent filed with the Tax Commission tax returns covering the inventory for each of its sixty-four separate stores. These returns included respondent's valuation upon the merchandise on hand on December 31, 1969. The method used by respondent in so valuing its inventory was that commonly known as the "lower of cost or market."

In different values upon its inventory, respondent divided its merchandise into four different classifications, types N, A, B, and C. Type N included new season merchandise, and type

A basic merchandise, in good condition and reordered regularly year round. These classifications are shown in respondent's tax return at original cost and were not questioned by the Tax Commission. Types B and C merchandise included items which, for various reasons, are considered obsolete and depreciated in value. The present controversy concerns the proper valuation to be placed on the latter two types of merchandise.

The values placed by respondent on types B and C merchandise were determined by each of respondent's stores upon the basis of guides formulated by a team of its employees selected by it each year for that purpose. These employees visit the New York market and make their determination as to the wholesale price of similar merchandise on the inventory date. On that basis price guides are formulated to be used by the individual stores in returning inventory for tax purposes.

The Tax Commission rejected the valuation placed by respondent on the B and C classifications and determined that the fair market value of the inventory for tax purposes was the cost of the merchandise. This resulted in an increase in the inventory valuation from $9,036,555.20 to $17,040,-788.67.

All agree that the Tax Commission was required to assess respondent's inventory of merchandise at its value on December 31, 1969-that is, what a willing buyer would pay a willing seller, both acting with full knowledge of the uses and purposes for which the property is adapted.

All also agree that, in this proceeding, the factual findings of the Tax Commission, concurred in by the Tax Board of Review, are binding on appeal unless such findings are wholly unsupported by any competent evidence.

The question for decision then is whether there was any competent evidence to sustain the findings of the Tax Com-

mission relative to the value for tax purposes of respondent's inventory on December 31, 1969.

Much of the record is devoted to the treatment of the question of the allowance for obsolesence and depreciation in determining market value. There is apparently no disagreement between the parties as to whether such factors are properly to be considered. Neither do the issues require a determination of what formula should be used in determining value for tax purposes, since it is agreed that the Tax Commission properly assesses upon the basis of actual cost unless the required showing is made to establish that the actual value is below cost on the inventory date.

The Tax Commission makes allowance for depreciation and obsolescence, but does so only upon a showing by the taxpayer that at the inventory date the depreciated merchandise was being offered for sale at a price less than original cost, in which event the Commission accepts the reduced retail price as the value. If such merchandise was not being offered at retail at less than original cost on the inventory date, the Commission determined its value for tax purposes at original cost. The present valuation by appellant resulted from notice by respondent that records of retail prices at less than cost were not available.

The Tax Commission was not required to accept the valuation placed upon the inventories by respondent and acted within its lawful powers when it made its own independent determination of value.

When respondent contested the assessment made by the Tax Commission, the burden was upon it to show that the valuation placed upon the inventories by the Commission was incorrect. Specifically, the burden was upon respondent to show that its B and C classified merchandise had depreciated in value below the original cost; for, admittedly, if such merchandise had not so depreciated in value, original cost was the accepted measure of actual value for tax purposes.

The Commission had before it the original cost of the merchandise. While other circumstances may affect the question, the cost of an article is ordinarily some evidence of its value for tax purposes. As stated in 84 C. J. S. Taxation § 576c, pp. 1147, 1148, "evidence of the purchase price of the assessed property while not conclusive is to be accorded substantial weight on the issue of 'fair market value.' "

Respondent's experts testified that in their opinion the value of the merchandise in question was less than original cost on the inventory date. However, respondent's assistant controller testified that this merchandise was not being offered for sale at the values placed by respondent's experts because to do so would mean that it would have to go out of business. It is inferable from this testimony that, while contending for a lower valuation, respondent was unwilling to sell the merchandise below original cost.

In addition, the testimony of a field auditor for the Tax Commission was to the effect that an examination by him of the records of five of respondent's sixty-four stores revealed that in most cases types B and C merchandise were being offered for sale at these stores on December 31, 1969, at a price of roughly 35% in excess of cost.

The Commission therefore had before it the figures as to the original cost, together with the fact that respondent was unwilling to sell the types B and C merchandise in the aggregate at a price less than original cost and was, in fact, at some of its stores, offering such merchandise, in most instances, for sale on the inventory date at prices above cost. These facts were properly considered by the Commission in making the assessment, and constituted evidentiary support for its findings.

Clearly our prior decision in *Wasson v. Mayes, et al.,* 252 S. C. 503, 167 S. E. (2d) 307, is not dispositive of the issues here involved.

The judgment of the lower court is reversed and the findings and order of the Tax Commission and the Tax Board of Review are reinstated.

Moss C. J., and LITTLEJOHN, J., concur.

BUSSEY and BRAILSFORD, JJ., dissent.

BUSSEY, Justice (dissenting) :

I most respectfully dissent. The respondent the Belk Department Stores, is, in fact, Sixty-four separate Belk Department Stores, in most instances separately incorporated, with separate stock ownership and management, operating at various localities in South Carolina. No objection has been interposed to these separate entities proceeding together as if a single entity, and, unless necessary, I shall refer to respondent as if it were, in fact, a single entity.

A separate return was filed for the 1970 tax year by each of the sixty-four stores, the value of the respective inventories having been determined by the use of an approved accounting method known as the "lower of cost or market" in use by the Belk Stores for many, many years for all inventory purposes, including financial statements, stockholders' reports, Dun & Bradstreet reports, income taxes, loan applications, etc. Under this accounting method, inventories are valued at original cost thereof, unless circumstances such as style change, seasonal change, soiled conditions, odd sizes or obsolescence have diminished the value of the particular merchandise to less than cost. Such depreciated merchandise is included at its appraised market value rather than original cost.

The Commission rejected respondent's method and simply substituted original cost as the value of the several inventories, without any allowance for depreciation or obsolescence. The respondent timely sought review from the Tax Board of Review, which, after review of the records and hearing arguments, by a majority vote declined to reverse the Commission. Thereafter, respondent petitioned the Court of Common Pleas for Richland County for a writ of certiorari, which was granted, and following a hearing, that court

reversed the findings of the South Carolina Tax Commission and the Tax Board of Review and ordered that the values returned by the respondent be accepted as the actual values of the various inventories involved. The majority opinion effectively reverses this holding and to that extent I concur on the ground that there was at least some evidence from which the Commission could infer that the aggregate of the returns of the sixty-four stores amounted to an understatement of the true value of the aggregate of the inventories and that the returns of one or more stores represented understatements of true values.

Upon the record before us, however, I conclude that the findings of the Commission as to the orginal cost being the true value of the respective inventories are without evidentiary support; and that the lower court correctly so held. The result is that so far there has been no valid assessment of these respective inventories for the particular tax year. Accordingly, the judgment of the lower court should be reversed in part, affirmed in part and the cause remanded with direction to remand to the Commission for the purpose of determining valid assessments of the various inventories.

Witnesses for Belk Stores testified at length before the Commission as to the adverse circumstances which detract from the value of the merchandise comprising the inventories of the various stores as of December 31st, all of which testimony is unchallenged in the record. The gist of such is as follows. The merchandise included in the inventories as of that date has been shopped over during the Christmas shopping season and during the after Chrstmas sales. As of December 31st, the new spring merchandise for the most part has not yet been received and the merchandise on the shelves and in the store rooms includes items remaining after several shopping seasons, which have been rejected by the shoppers during the busiest season of the year. On inventory date, the percentage of soiled goods, odd sized goods, out of style goods and unmerchantable fashions as compared to the total inventory is at its highest of any time during the year. There

is a rapid dissemination of fashion news; and styles of both men's and ladies' clothing are rapidly and drastically changed. Fashionable goods remaining unsold after a particular season may be and often are totally unmerchantable during the same season the following year because of style changes. As a result of these various factors, a very large portion of the inventories as of December 31st has a true value far below original cost.

No evidence contrary to any of the foregoing is contained in the record. There is abundant authority for the proposition that when the evidence is all one way it must be accepted by the fact finding body, and that facts to the contrary may not be reasonably inferred. *Hines v. Pacific Mills,* 214 S. C. 125, 51 S. E. (2d) 383; 30 Am. Jur., (2d) 233, *et seq.,* Evidence, Sections 1083, 1084; 5A C. J. S. Appeal and Error § 1645, p. 259, n. 20; § 1642, p. 221, n. 21.

Despite clearly proved obsolescence and depreciation, is there any competent evidence from which the Commission could reasonably infer that the true values of the several inventories were the original cost thereof: It is, of course, true that ordinarily the cost of an article is some evidence of its value for tax purposes. In this connection the majority opinion quotes the text from 84 C. J. S. Taxation § 576c, pp. 1147, 1148. The two cases cited in the footnotes in support of the quoted text involved real estate, rather than inventories; both acknowledge the quoted rule but appear not to have followed it. There are a number of cases collected in West's Decennial Digest, under Taxation, Key No. 350, dealing with inventories, the cost thereof and their valuations for tax purposes; an apparently leading case being *J. I. Case Co. v. Chambers,* 210 Or. 680, 314 P. (2d) 256. These cases recognize *that cost may be considered along with all of the other evidence* in determining the value of an inventory, but that *cost is not synonymous with or representative of actual or true value,* and that proved obsolescence and depreciation *must be taken into account.*

"Obsolescence or functional depreciation, if proven, should have an important bearing on the establishment of value. Once obsolescence becomes manifest, any decision as to value requires due allowance for such, * * *." *Colorado & Utah Coal Co. v. Rorex*, 149 Colo. 502, 369 P. (2d) 796.

It appears that the policy of the Tax Commission is to make allowance for depreciation and obsolescence but only on proof by the taxpayer that at inventory date the depreciated merchandise was being offered for sale at retail prices less than original cost, in which event the Commission treats the reduced retail prices as the value. In the present case it appears that the Commission was notified by respondent that it did not have sufficient records of retail prices below cost on the particular inventory date. The evidence on this point is not too clear but inferentially what was meant was that Belks did not have sufficient records of retail prices below cost to support its valuation of the various inventories.

In the summer of 1970 a field auditor for the Commission examined the records of five of respondent's stores as to the retail prices on inventory date. It is clear from his testimony and exhibits that at least in these stores respondent was, in many instances on inventory date, offering merchandise at retail prices below cost. No reduction or assessment, however, was accorded these five stores despite their below cost at retail prices. It thus appears that the Commission was not willing for some unexplained reason to apply its own formula for allowing for obsolescence or depreciation in the present case.

But the Commission's formula, even if followed, is, to my mind, for a variety of reasons virtually no help whatever in arriving at what is in truth the actual value of a particular inventory. What both the Constitution and statute clearly contemplate, I think, is the value of the inventory as a whole, not the aggregate of the retail asking prices which might or might not be received at some time in the future. Certainly no willing buyer would, on December 31st, volun-

tarily pay for a complete inventory the aggregate of the retail prices which he might hope to receive in the course of the following year. As a practical matter, for a merchant to reduce his assessment from original cost to its actual true value, under the Commission's formula, would require him on or about December 30th to go through his entire inventory, price all leftovers, out of season goods, etc. in accordance with their then actual value, and, whether or not there was any present demand for the same, offer such to the public for such prices on December 31st. Upon failure to perform such a difficult, if not impossible, task, the merchant is simply penalized by being taxed upon an excessive valuation.

I respectfully submit that there is no evidence from which a reasonable inference can be drawn that "respondent was unwilling to sell the types B and C merchandise in the aggregate at a price less than original cost." It is true that respondent's assistant controller testified, in effect, that the B and C merchandise in the sixty-four stores was not being offered for sale at a price in the aggregate eight million dollars less than cost and explained why not. I do not think it inferable however, from his testimony that respondent would not have accepted anything less than cost if offered. Eight million dollars is rather wide spread. Moreover, it is clearly established that some of the merchandise was being offered even at retail below cost. In the final analysis the record discloses to my mind that the Commission here has not made its own independent determination of value. It has simply substituted original cost for true value, there being no other evidence whatever in the case to support the conclusion that original cost was, in fact and truth, the value of the several inventories. While original cost is ordinarily some evidence to be considered along with all other evidence on the issue of value, I submit that no reasonable inference can be drawn from cost alone that such is true value, when substantial obsolescence and depreciation have been clearly established but uncontradicted evidence and, at least in part, confirmed by evidence adduced by the Commission itself.

I would reverse in part and affirm in part and remand for further proceedings consistent with the views hereinabove expressed.

BRAILSFORD, J., concurs.