489 S.E.2d 674

RELIANCE INSURANCE COMPANY, as Successor in Interest to United Pacific Life Insurance Company, Appellant,

v.

Leslie SMITH, Lexington County Assessor, and The County of Lexington, Respondents.

No. 2694.

Court of Appeals of South Carolina.

Heard May 6, 1997.
Decided June 30, 1997.

S. Jahue Moore, of Kirkland, Wilson, Moore, Allen, Taylor & O'Day, West Columbia, for appellant.

Jeffrey M. Anderson, of Nicholson, Davis, Frawley, Anderson & Ayer, Lexington, for respondents.

HOWELL, Chief Judge:

Reliance Insurance Company (Reliance) appeals from the property tax valuation of its Harbison Court Shopping Center

(the Property), located in Lexington County. The Lexington County Department of Assessment and Equalization (the Assessor) originally appraised the Property for the 1992 tax year at $9,000,000. Reliance appealed to the Lexington County Assessment Appeals Board, and the Board lowered the valuation of the property to $8,000,000.[1] The Assessor appealed, seeking a contested case hearing before an Administrative Law Judge (ALJ). The ALJ valued the property at $9,000,-000, and the circuit court affirmed. We likewise affirm.

## I.

Reliance's predecessor in interest purchased the Property in 1991 for $16,610,000.[2] The Property, which is situated on just over 23 acres of land, has approximately 194,000 square feet of rental space located in two structures—a 189,-000 square foot shopping center with 146,474 square feet of finished space and 42,460 square feet of unfinished space,[3] and an outparcel with a separate, single-use building with 5,227

---

1. James K. Smith, an appraiser with the Assessor's office, testified that the Assessor offered to lower the original assessment from $9,000,000 to $8,500,000 in an attempt to resolve Reliance's appeal to the Board. In June 1993, during the process of Reliance's appeal to the Board, Smith assessed the property at $8,404,000. After more thoroughly analyzing the Property, the Assessor concluded that $9,000,000 more accurately reflected the true value of the property.

2. The ALJ found as a fact that the Property sold for $16,610,000 in 1991, the year before the appraisal at issue, and the evidence in the record supports this conclusion. At oral argument, Reliance argued that the $16,610,000 purchase price included property other than the Property at issue here. However, Reliance did not raise this purported error to the ALJ by way of a post-trial motion, nor did it challenge the factual finding in its appeal to the circuit court or in its brief filed with this Court. Accordingly, we must accept as correct the ALJ's finding that the purchase price of the Property was $16,610,000. *See, e.g., Chan v. Thompson*, 302 S.C. 285, 395 S.E.2d 731 (Ct.App.1990) (unappealed finding becomes the law of the case); *Halbersberg v. Berry*, 302 S.C. 97, 394 S.E.2d 7 (Ct.App.1990) (A party who fails to bring an alleged error to the trial court's attention by way of a proper post-trial motion cannot challenge the issue on appeal.).

3. These figures represent the degree of completion of the shopping center as of January 1992. According to Smith, the unfinished area needed only minimal work to finish, such as "hang[ing] some sheetrock and drop[ping] the ceiling in." Smith estimated the cost to finish the property to be approximately $20 per square foot, or $900,000.

square feet of rentable space. At the time of the County's appraisal, the improvements on the Property were approximately one year old, and approximately seventy-five percent of the Property's finished space was occupied.

In preparation for the appeal of the assessment, Smith analyzed the property using various valuation methods—the cost method, the income capitalization method, and the sales comparison method. The appraisal of the Property, which was submitted to the ALJ, describes the various methods of valuation used by the Assessor.

The income capitalization approach "looks at property value through the eyes of a typical investor. In this approach, typical rental income and its relationship to sales price is analyzed by using a capitalization rate which represents the ratio of sales price to net rental income obtained." Using the income capitalization approach, the Assessor valued the Property at $10,300,000.

The sales comparison approach directly compares the subject property with recent sales of similar properties. This approach "closely duplicates the choices available to buyers in the market at the time of the appraisal and assumes that an informed purchaser will pay no more for a property than the cost of acquiring an existing, or substitute property with the same utility." Under this approach, the total subject property is compared directly with recent sales of similar properties. For improved property, the gross sales price is divided by the square footage of building area of improved properties to arrive at an overall value for the land and building combined. The Assessor determined the value of the Property to be $10,940,000 using the sales comparison approach.

The cost approach begins with an estimate of the value of the site as if it were vacant and utilized to its highest and best use. To this figure is added the cost to reproduce the subject improvement at current construction prices, less any accrued depreciation. The cost approach

is based on the assumption that an informed purchaser would pay no more for a property than the cost of producing a substitute property with the same utility. This approach is particularly meaningful for improvements which are new or almost new. Although depreciation in all forms can be

extracted directly from the market, extreme care must be taken to select comparables which are similar to the subject in terms of age, condition, size and location.

Using the cost approach, the Assessor valued the finished portion of the main shopping center at $40.00 per square foot and the unfinished portion at $18.15 per square foot.[4] After taking into account the value of the outparcel, the parking lot, and depreciation of the improvements, the County determined the total value of the Property under the cost approach to be $9,000,000, or approximately $46.35 per square foot.

The Assessor then performed an equitable analysis comparing its appraisals of the Property to those of other properties to ensure that the value assigned to the Property was in line with values assessed on similar properties in Lexington County. After analyzing the value of the Property under the methods described above, the Assessor concluded that the Property should be valued at $9,000,000.

At the hearing before the ALJ, Reliance vigorously cross-examined Smith about the appraisal of the Property and the validity of the assessment approaches; however, Reliance did not present an independent appraisal of the Property. The only evidence presented by Reliance was the testimony of Joseph Karol, an expert in the field of commercial appraisals.

Karol's testimony consisted primarily of criticisms directed at the Assessor and each of the methods used to value the Property. According to Karol, the approaches used by Smith to assess the property did "not appear necessarily to be reasonable." Although Karol did not appraise the Property, he stated that a reasonable assessment of the center would be between $7,500,000 and $8,000,000. He reached this figure by taking the assessed value for Harbison Center, a shopping center located across Harbison Boulevard from the Property, and discounting that value to take into account the fact that

---

4. Both the circuit court's order and the respondent's brief state that the Assessor valued the unfinished shopping center space at $18.50 per square foot. However, the testimony of Smith and the written appraisal of the property indicate that the unfinished space was valued at $18.15 per square foot. This difference is immaterial to the issues on appeal.

Harbison Center was fully finished, while the Property had 42,460 square feet of finished space.

The ALJ concluded that the cost approach yielded the most accurate valuation of the Property. The ALJ concluded that use of the income capitalization approach, although generally favored, was not appropriate in this case, because the shopping center, "being only two years old and still seeking to attract tenants, ha[s] not yet reached a stable income level." [5] As to the sales comparison approach, the ALJ concluded that its use in this case was likewise inappropriate, given that there were no sales "similar enough in their state of completion or occupancy to be used as comparables." The ALJ noted that the cost approach is useful for valuing recently constructed properties and is particularly useful in cases where the property "is difficult to value under an income or market approach where the price in the market is indeterminate because of some unique consideration." Therefore, notwithstanding the $8,000,000 value assigned to the Property by the Lexington County Assessment Appeals Board, the ALJ determined that the Property should be valued at $9,000,000 for the 1992 tax year.

## II.

### A.

On appeal, Reliance first argues that the ALJ's order must be reversed because the ALJ improperly placed the burden of proof of the assessment value on Reliance. Reliance contends that, in a contested case hearing, the ALJ is limited to a restricted review of the record from the hearing before the county board, and that the ALJ is required to adopt the county board's assessment if supported by substantial evidence. Thus, according to Reliance, the ALJ improperly considered Reliance's failure to submit evidence demonstrating the value of the property and its failure to submit an appraisal, and improperly failed to "affirm" the Board's assessment of the Property.

---

5. The ALJ further noted that Reliance even agreed that use of the income capitalization approach would not be appropriate.

534

■ We agree with Reliance that the Assessor bore the burden of proof before the ALJ. The real issue, however, is not which party bore the burden of proof, but precisely what it is that the Assessor was required to prove. Reliance contends that the Assessor was required to prove that the $8,000,000 valuation established by the Lexington County Assessment Appeals Board was incorrect. We disagree.

A taxpayer or county assessor "may appeal a property tax assessment made by [a county board of assessment] by requesting a contested case hearing before the Administrative Law Judge Division in accordance with the rules of the Administrative Law Judge Division." S.C.Code Ann. § 12–60–2540(A) (Supp.1996). The Rules of Procedure for the Administrative Law Judge Division require that the ALJ make independent findings of fact in contested case hearings, *see* Rule 29(B), Rules of Procedure for the Administrative Law Judge Division, and the Administrative Procedures Act clearly contemplates that the ALJ will make his own findings of fact in a contested case hearing. *See* S.C.Code Ann. § 1–23–320(d) (Supp.1996) ("The administrative law judge division shall . . . enforce by proper proceedings the attendance and testimony of witnesses."); *id.* § 1–23–320(i) (Supp.1996) ("Findings of fact shall be based exclusively on the evidence and on matters officially noticed."); *id.* § 1–23–350 (1986) ("A final decision or order adverse to a party in a contested case shall . . . . include findings of fact and conclusions of law, separately stated."); *see also* S.C.Code Ann. § 1–23–330 (1986) (discussing the receipt of evidence in contested cases).

■ Therefore, although a case involving a property tax assessment reaches the ALJ in the posture of an appeal, the ALJ is not sitting in an appellate capacity and is not restricted to a review of the decision below. Instead, the proceeding before the ALJ is in the nature of a *de novo* hearing. *See Blizzard v. Miller,* 306 S.C. 373, 375, 412 S.E.2d 406, 407 (1991) ("A trial *de novo* is one in which 'the whole case is tried as if no trial whatsoever had been had in the first instance.' "). Thus, the Assessor is required to prove the correctness of the valuation he is seeking; the Assessor is not required, as Reliance argues, to prove the incorrectness of the Board's decision. To accept Reliance's argument would be completely inconsistent with the mandates of the Administrative Proce-

dures Act and with the *de novo* nature of the contested case hearing.

The Assessor presented ample evidence supporting the propriety of the $9,000,000 valuation of the Property, evidence which the ALJ properly considered. Because the evidence presented by the Assessor standing alone was sufficient to carry the burden of proof, the ALJ likewise properly considered Reliance's failure to present any contrary evidence as to the proper value of the Property.

Thus, the ALJ followed the proper procedure and properly allocated the burden of proof during the contested case hearing, and his decision that the cost method provided the most accurate estimation of the value of the Property is clearly supported by substantial evidence. *See, e.g., Grayson v. Carter Rhoad Furniture*, 317 S.C. 306, 454 S.E.2d 320 (1995) (Substantial evidence is such relevant evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion reached by the fact-finder.); *accord Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 276 S.E.2d 304 (1981); *O'Banner v. Westinghouse Elec. Corp.*, 319 S.C. 24, 459 S.E.2d 324 (Ct.App.1995); *see also Belk Dep't Stores v. Taylor*, 259 S.C. 174, 191 S.E.2d 144 (1972) (The purchase price of property is some evidence of value.); *Rutledge v. St. Paul Fire & Marine Ins. Co.*, 286 S.C. 360, 368, 334 S.E.2d 131, 136 (Ct.App.1985) ("The price paid for property at an actual, voluntary and bona fide sale thereof is presumptive evidence of the property's value."). Accordingly, we find no error in the ALJ's determination that the Property should be valued at $9,000,000. *See* S.C.Code Ann. § 1–23–610(D) (Supp.1996) (In an appeal from a final decision of an ALJ, the decision of the ALJ can be reversed if "the substantive rights of the petitioner ha[ve] been prejudiced because the finding, conclusion, or decision is . . . made upon unlawful procedure . . . or clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.").[6]

---

6. It is not completely clear that appellate review of the ALJ's decision in this case is governed by S.C.Code Ann. § 1–23–610, the section cited by the parties. Section 1–23–610(A) provides for "quasi-judicial review of any final decision of an administrative law judge of cases involving departments governed by a board or commission authorized to exercise the sovereignty of the State," while section 1–23–610(B) provides for

## B.

Reliance also argues on appeal that the $9,000,000 valuation violates the South Carolina Constitution. Our Constitution requires that the "assessment of all property shall be equal and uniform" within certain specified classifications. S.C. Const. art. X, § 1. As noted above, the Property, which includes some unfinished space, was valued at an overall average of $46.35 per square foot. Harbison Center, however, the property located across the street from the Property, was valued for the same tax year at an average of $46.49 per square foot. Accordingly, Reliance argues that the Property was not valued in an equal and uniform manner. We disagree.

The crux of Reliance's equity argument is that because it is being required to pay taxes on the Property's unfinished space at approximately the same rate as that for the finished space at Harbison Center, the Property was not equally and uniformly assessed. This simplistic argument, however, ignores certain important facts.

First, while the parties frequently used a dollars-per-total-square-footage average as a convenient shorthand means of referring to the Assessor's valuation of the Property, the fact remains that the Assessor did not value the unfinished space of the Property at the same rate as the finished space. As indicated by the Assessor's appraisal of the Property and the testimony presented to the ALJ, the Property's finished space was valued at $40.00 per square foot, while the unfinished

"judicial review of any final decision of an administrative law judge of cases involving departments governed by the single director." The case at bar involves an appeal from a county board, which does not appear to be a "department" as used in subsection 610(A) or 610(B). However, S.C.Code Ann. § 1–23–380 (Supp.1996) provides that a party who has "exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review." S.C.Code Ann. § 1–23–380(A) (Supp.1996). "Agency" is defined "to include the Administrative Law Judge Division." S.C.Code Ann. § 1–23–310 (Supp.1996). Thus, it would appear that this appeal seeking judicial review of a final order issued by an ALJ in a contested case should be reviewed under section 1–23–380 rather than section 1–23–610. Nonetheless, because the standards of review established under the statutes are essentially identical, compare S.C.Code Ann. § 1–23–380(A)(6) with S.C.Code Ann. § 1–23–610(D), we need not decide which section applies.

space was valued at $18.15 per square foot. The $46.35 per square foot figure is an average derived from the value of all the improvements, including the main shopping center, the outparcel, and the parking lot, and the total square footage, finished and unfinished, of the main shopping center and the outparcel. While use of this average may be a convenient means of expressing the valuation of the Property, Reliance's use of the average to argue that the finished and unfinished space were valued at the same rate is inaccurate and misleading.

Second, the fact that the average valuation for the Property is similar to the average valuation for Harbison Center is simply irrelevant. Certainly, the fact that Harbison Center has no unfinished space should, all things being equal, yield a higher dollars-per-square-foot average for Harbison Center than the Property. However, all things are *not* equal—the record clearly establishes that Harbison Center is approximately two years older than the Property. Therefore, the higher (as compared to the Property) valuation that should result from the fact that Harbison Center is fully finished is offset, to some degree, by its greater (as compared to the Property) depreciation. Thus, the differences between the Property and Harbison Center prevent the similarity in the dollars-per-square-foot averages for the properties from being conclusive or even persuasive evidence that the valuations are not equal and uniform.

Finally, even assuming that the Property is overvalued as compared to Harbison Center, this fact does not mean that there has been a constitutional violation. While our Constitution requires equality and uniformity in tax assessments, "[a]bsolute accuracy with respect to valuation and complete equality and uniformity are not practically attainable." *Wasson v. Mayes*, 252 S.C. 497, 502, 167 S.E.2d 304, 306–07 (1969) (discussing valuation and taxation of inventories). As discussed above, there is substantial evidence in the record establishing that $9,000,000 is a fair and accurate valuation of the Property. Therefore, because the Property is assessed at its actual value, *see* S.C. Const. art. III, § 29 ("All taxes upon property, real and personal, shall be laid upon the *actual value* of the property taxed.") (emphasis added), the

fact that Harbison Center might be undervalued does not render the accurate valuation of the Property constitutionally defective. *See Owen Steel Co. v. South Carolina Tax Comm'n,* 287 S.C. 274, 278–79, 337 S.E.2d 880, 882 (1985) (rejecting argument that "admittedly correct and constitutional assessments by the Commission [should be] reduced to the incorrect and unconstitutional median percentages assessed by the respective counties," in case where there was no evidence of "systematic and intentional undervaluation of property by the counties"), *cert. denied,* 475 U.S. 1123, 106 S.Ct. 1643, 90 L.Ed.2d 188 (1986); *see also Sunday Lake Iron Co. v. Wakefield Township,* 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154 (1918).

In this case, Reliance does not allege that other properties in Lexington County have been intentionally and systematically undervalued. Thus, we agree with the ALJ that the possibility that Harbison Center may be undervalued is insufficient to establish that the Assessor's valuation of the Property is unconstitutional.

Accordingly, for the foregoing reasons, the circuit court's decision affirming the decision of the ALJ is hereby

**AFFIRMED.**

GOOLSBY and ANDERSON, JJ., concur.