In re MAYFAIR MILLS, INC., a South Carolina Corporation, Debtor and Debtor–in–Possession.

Mayfair Mills, Inc., Debtor and Debtor–in–Possession, Plaintiff,

v.

Spartanburg County, Pickens County, and Anderson County, Defendants.

No. C/A 01–08491–W.
Adversary No. 02–80090–W.

United States Bankruptcy Court, D. South Carolina.

Nov. 27, 2002.

Brian E. Arnold, Greenville, SC, Jesse H. Austin, III, Karol K. Denniston, Paul, Hastings, Janofsky & Walker LLP, Atlanta, GA, Michael M. Beal, John B. Butler, Michael S. Church, Janet Godfrey Griggs, Annemarie B. Matthews, E. Katherine Wells, Columbia, SC, Deborah L. Fletcher, Charlotte, NC, Julio E. Mendoza, Jr., Nexson, Pruet, Jacobs & Pollard, Columbia, SC, for creditors.

G. William McCarthy, Jr., Columbia, SC, for debtor.

David H. Conaway, Charlotte, NC, David M. Groger, David M. Matthews, Shumaker, Loop & Kendrick, LLP, Charlotte, NC, David Allen Grumbine, Greenville, SC, David L. Kreindler, Phillips, Nizer, Benjamin, Krim & Ballon LL, New York City, John Carl West, Jr., Camden, SC, for Unsecured Creditors Committee and Joshua L. Baily & Co. Inc.

John Timothy Stack, Office of the United States Trustee, Columbia, SC, U.S. Trustee.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the cross motions for summary judgment filed by Mayfair Mills, Inc. ("Debtor" or "Plaintiff") and Spartanburg County, Pickens County, and Anderson County (collectively, "Defendants"). In the underlying Complaint, Plaintiff seeks to reduce the tax liability it owes Defendants by relying on 11 U.S.C. § 505(a).[1] Plaintiff asserts that it sold most of its assets through three sales pursuant to § 363 and that the proceeds realized from the sales were substantially less than the assessed values Defendants assigned to the properties for tax purposes. According to Plaintiff, the actual or true values of the properties are reflected in the amounts generated from the § 363 sales; consequently, Defendants over-valued the taxable properties. Because the assessed values are inflated, Plaintiff argues the taxes should be reduced and be based upon the value realized from the § 363 sales. In response, Spartanburg County argues that the determination of taxes is controlled by state law and that it valued the taxable properties accordingly. Anderson County and Pickens County generally deny the allegations of Plaintiff's Complaint.

---

1. Further references to the Bankruptcy Code shall be by section number only.

■ Plaintiff then filed its Motion for Summary Judgment (the "Plaintiff's Motion"). In the Plaintiff's Motion, Plaintiff argues that summary judgment is appropriate because § 505(a) permits courts to value properties that generate ad valorem taxes.[2] In addition, Plaintiff asserts that the undisputed material facts indicate that Defendants assessed the value of the taxable properties and levied ad valorem taxes and that neither the assessed value nor the taxes have been previously adjudicated. Plaintiff also asserts that, under South Carolina law, a taxpayer may challenge an assessment of real or personal property and achieve a reduction if sufficient evidence indicates that the assessed value is not equivalent to the true value of the property. Plaintiff then argues that the two Orders approving sales pursuant to § 363 are the law of the case and that these Orders establish that the sales reflect the true value of the properties because the sales occurred after Plaintiff adequately marketed the properties and participated in good faith negotiations to consummate the sales.[3]

Defendants also moved for summary judgment, arguing that the real party in interest is the lender providing debtor-in-possession financing and not Plaintiff and that Plaintiff failed to challenge the tax assessments by filing a timely protest.[4] Further, Defendants argue that Plaintiff has failed to carry its burden of proof as it has not shown that the assessments were incorrect. Indeed, according to Defendants, Plaintiff did not establish the true value of the real properties pursuant to S.C.Code Ann. § 12–37–930 (Law.Co-op.1976) (Supp.2001) by virtue of its § 363 sales because (1) Plaintiff did not adequately expose the real properties to the market and (2) Plaintiff sold the real and personal properties under compulsion as a result of its need to sell the properties before winter and because the sales occurred while Plaintiff was in bankruptcy. Moreover, Defendants argue that Plaintiff fails to allocate the amounts received for real property from amounts received for personal property Plaintiff sold pursuant to § 363. According to Defendants, this failure prevents the Court from comparing the values received from the sales with the values Defendants used for tax assessment purposes. As a result, the Court is rendered unable to determine that Defendants over-valued the properties based on the evidence presented relating to the § 363 sales. Finally, Defendants disagree with Plaintiff's assertion that it can rely on the sales pursuant to § 363 to determine the value of the personal property sold. According to Defendants, the valuation of personal property is based upon a statutory depreciation schedule that cannot be departed from in favor of market value.

Both parties object to their opponent's motions for summary judgment.

After considering the pleadings, the supporting affidavits, and the parties' argu-

---

**2.** Ad valorem taxes are those that are imposed proportionally on the value of something rather than on its quantity or some other measure. *See Black's Law Dictionary* 1469 (7th ed.1999).

**3.** At the hearing on the cross motions for summary judgment, Plaintiff withdrew the portion of its Complaint seeking to reduce the taxes for real and personal property located in Pickens County that was sold to Central Textiles of New York on October 10, 2001.

Plaintiff withdrew this portion of its Complaint upon confirmation from Pickens County that the purchaser, Central Textiles, paid the taxes at issue.

**4.** Anderson and Pickens Counties filed their Motion for Summary Judgment on October 18, 2002. Also on October 18, 2002, Spartanburg County filed its Joinder wherein it adopts and joins the Motion filed by Anderson and Pickens Counties.

ments, the Court makes the following Findings of Fact and Conclusions of Law.[5]

## FINDINGS OF FACT

1. On December 31, 2000, Defendants assessed and levied real and personal property taxes on Plaintiff's real and personal property located in Spartanburg, Pickens, and Anderson Counties for the fiscal tax year 2001. Specifically,

(a) Spartanburg County assessed and levied taxes totaling $306,779.28 ($51,-435.32 for real property taxes and $225,343.96 for personal property taxes) for real and personal property owned by Plaintiff located within Spartanburg County. To determine these taxes, Spartanburg County used the assessed values of Plaintiff's Baily Plant at $91,770.00, the personal property located within the Baily Plant at $586,610.00, Plaintiff's Mayfair Plant at $87,260.00, and the personal property located within the Mayfair Plant at $404,290.00.

(b) Anderson County assessed and levied taxes totaling $94,519.36 ($53,405.35 for real property taxes and $41,114.01 for personal property taxes) for real and personal property owned by Plaintiff located within Anderson County. To determine these taxes, Anderson County used the assessed values of Plaintiff's Starr Plant at $2,028,000.00 and the personal property located within the Starr Plant at $1,592,381.00.

(c) Pickens County assessed and levied taxes totaling $332,172.22 (all for personal property taxes) for personal property owned by Plaintiff located within Pickens County. To determine these taxes, Pickens County used the assessed values of $544,571.00 for personal property located at Highway 93, $2,681,905.00 for personal property located at Hagood Street and South Railway, $2,728,667.00 for personal property also located at Hagood Street and South Railway, and $3,192,762.00 for personal property the location of which is not disclosed by the tax assessment.

2. On August 14, 2001, Plaintiff filed its Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code.

3. On October 10, 2001, the Court entered an Order approving the sale of machinery and equipment from Plaintiff to Coker International, LLC for a total of $1,250,000.00 (the "Coker Sale").[6] The machinery and equipment sold was located at Plaintiff's Starr Plant in Anderson County.

4. On November 21, 2001, the Court entered an Order approving the sale of real and personal property from Plaintiff to Gibbs International, Inc. for $4,944,000.00 (the "Gibbs Sale"). Plaintiff sold real property consisting of its Mayfair and Baily Plants, both located in Spartanburg County, its Glenwood Plant and Warehouse 93, both located in Pickens County, and its Starr Plant located in Anderson County. Plaintiff sold personal property consisting of machinery and equipment located at the Mayfair and Baily Plants (Spartanburg County) as well as the Glenwood Plant and Warehouse 93 (Pickens County).

---

**5.** The Court notes that, to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and, to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

**6.** Prepetition, Debtor and Coker entered into an agreement on May 4, 2001 for the sale of machinery and equipment, and the parties had partially performed this agreement as Coker had paid $455,000.00 of the purchase price before Debtor filed bankruptcy. On September 21, 2001, Debtor moved to assume this executory contract to proceed with the sale. On October 10, 2001, the Court granted the motion and approved the sale of assets.

5. Debtor asserts that its postpetition lender, Wachovia Bank, N.A., escrowed from the sales proceeds an amount to cover the taxes at issue.

6. All parties agree that, prior to this adversary proceeding, Plaintiff has not contested the amount or legality of the taxes at issue before any other judicial or administrative tribunal of competent jurisdiction.

## CONCLUSIONS OF LAW

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings under the Bankruptcy Code by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. Summary judgment is appropriate "if the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, the court must view all evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party has the initial burden to show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once this initial showing is made, the burden of production shifts to the nonmoving party.

The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548; *see also* Fed.R.Civ.P. 5(e). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts and must demonstrate there is a genuine issue for trial." *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. 1348; *see also Campbell v. Deans (In re J.R. Deans Co.)*, 249 B.R. 121, 128 (Bankr.D.S.C.2000) (quoting *Dunes Hotel Assoc. v. Hyatt Corp. (In re Dunes Hotel Assoc.)*, 194 B.R. 967, 976 (Bankr.D.S.C.1995)) (" '[T]he party opposing summary judgment may not merely rely on his pleadings but must set forth specific facts which controvert the moving party's facts and which show the existence of a genuine issue for trial.' "). The Court should grant summary judgment "against a party who fails to make a showing sufficient to establish the evidence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Dunes Hotel Assoc.*, 194 B.R. at 976 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

### B. Application of the Summary Judgment Standard to Plaintiff's § 505 Action

Section 505(a)(1) provides that a bankruptcy court may determine the amount or legality of any tax; however, this provision has certain limitations. One limitation is that a bankruptcy court cannot determine the amount or legality of a tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction prior to the commencement of the bankruptcy case. *See* § 505(a)(2)(A). In addition, a bankruptcy court may not de-

termine any right of the estate to a tax refund before the earlier of 120 days after the trustee properly requests such refund or a determination by the governmental unit of such request. *See* § 505(a)(2)(B). Aside from these limitations, a bankruptcy court's authority to determine the amount or legality of any tax is broad, encompassing both federal and state tax liabilities including state real property taxes, ad valorem taxes, federal income taxes, and federal employment taxes. *See New Haven Projects Ltd. Liab. Co. v. City of New Haven (In re New Haven Projects Ltd. Liab. Co.),* 225 F.3d 283, 286 n. 2 (2d Cir.2000).[7]

■ From the undisputed facts, this Court can consider Plaintiff's Complaint as all of the parties agree that Plaintiff did not contest the amount or the legality of the taxes prepetition. In fact, Defendants emphasize that Plaintiff failed to avail itself to the mechanism provided by state law for challenging property taxes; however, a majority of authorities have held that, despite a debtor's failure to follow state law procedures for contesting the amount of taxes levied or their legality, a debtor is not precluded from moving pursuant to § 505 to determine its taxes. *See New Haven Projects,* 225 F.3d at 286 ("The broad grant of jurisdiction contained in § 505 makes no reference to time periods imposed by state law .... [A] debtor as representative of the bankruptcy estate is allowed to contest tax debts in the bankruptcy court even though his prior inaction would bar him from contesting them elsewhere.") (citing *Ledgemere Land Corp. v.*

*Ashland (In re Ledgemere Land Corp.)* 135 B.R. 193, 196–97 (Bankr.D.Mass. 1991)); *Baltimore County v. Hechinger Inv. Co. of Delaware (In re Hechinger Inv. Co. of Delaware, Inc.),* 276 B.R. 43, 47 (D.Del.2002) (finding that there is no requirement of § 505 that a debtor must exhaust state law remedies as a condition for obtaining a bankruptcy ruling on tax liability); *150 N. St. Associates Ltd. P'ship v. City of Pittsfield (In re 150 N. St. Associates Ltd. P'ship),* 184 B.R. 1, 5 (Bankr.D.Mass.1995) (concluding that the debtor's failure to seek an abatement does not bar it from seeking an adjudication in the bankruptcy court regarding its tax liability); *In the Matter of E. Coast Brokers & Packers, Inc.,* 142 B.R. 499, 501 (Bankr. M.D.Fla.1992) (finding the bankruptcy court still has authority to determine the debtor's objection to claim for ad valorem personal property taxes although the debtor did not timely object to the taxes pursuant to state law); *In re A.H. Robins Co., Inc.,* 126 B.R. 227, 229 (Bankr.E.D.Va. 1991) (finding that a debtor's failure to challenge tax assessments does not deprive the bankruptcy court of jurisdiction to decide the validity of tax claims).

■ The Court must now determine whether Defendant's assessments of ad valorem taxes correctly reflect the taxable real and personal properties' values, and this determination must be consistent with state law principles. *See In re AWB Associates, G.P.,* 144 B.R. 270, 278 (Bankr. E.D.Pa.1992) (citing *In re Fairchild Aircraft Corp.,* 124 B.R. 488, 492 (Bankr. W.D.Tex.1991)); *see also In re Liuzzo,* 204

---

**7.** The Court notes that several bankruptcy courts have considered ad valorem taxes in the context of § 505. *See, e.g. City of Perth Amboy v. Custom Distrib, Services, Inc. (In re Custom Distrib. Services Inc.),* 224 F.3d 235 (3d Cir.2000); *In re Mulberry Phosphates, Inc.,* 283 B.R. 347 (Bankr.M.D.Fla.2002); *150 N. St. Associates Ltd. P'ship v. City of Pittsfield*

*(In re 150 N. St. Associates Ltd. P'ship),* 184 B.R. 1 (Bankr.D.Mass.1995); *In re Piper Aircraft Corp.,* 171 B.R. 415 (Bankr.S.D.Fla. 1994); *In re AWB Associates, G.P.,* 144 B.R. 270 (Bankr.E.D.Pa.1992); *In re 499 W. Warren St. Associates, Ltd. P'ship,* 143 B.R. 326 (Bankr.N.D.N.Y.1992); *In re Ishpeming Hotel Co.,* 70 B.R. 629 (Bankr.W.D.Mich.1986).

B.R. 235, 237 (Bankr.N.D.Fla.1996) ("A bankruptcy court faced with a motion under 11 U.S.C. § 505 challenging the assessment of a debtor's property by a local property appraiser must determine that value consistent with state law principles since the valuation is merely part and parcel of the adjudication of the tax due and owing, a question controlled by state law.") (citing *Fairchild Aircraft*, 124 B.R. 488 and *In re Building Technologies Corp.*, 167 B.R. 853 (Bankr.S.D.Ohio 1994)). Accordingly, the Court notes that, in South Carolina, an assessor's valuation decision is presumed correct, and the taxpayer contesting the valuation has the burden to overcome the presumption that the valuation is correct.[8] *See S. Carolina Tax Comm'n v. S. Carolina Tax Bd. of Review*, 278 S.C. 556, 299 S.E.2d 489, 492–93 (1983); *see also Belk Dep't. Stores v. Taylor*, 259 S.C. 174, 191 S.E.2d 144, 146 (1972) (noting that the taxpayer contesting an assessment has the burden to prove that the assessed valuation was incorrect); *Newberry Mills, Inc. v. Dawkins*, 259 S.C. 7, 190 S.E.2d 503, 507 (1972) (noting that it was incumbent upon the taxpayer to prove that the taxing authority's valuation of its property was incorrect); *Cloyd v. Mabry*, 295 S.C. 86, 367 S.E.2d 171, 173 (1988) ("A taxpayer contesting an assessment has the burden of showing that the valuation of the taxing authority is incorrect.").

 In South Carolina, the valuation of real and personal property for tax assessment is based upon S.C.Code Ann. § 12–37–930 (Law.Co-op.1976) (Supp. 2001). In part, this statute provides,

All property must be valued for taxation at its true value in money which in all cases is the price which the property would bring following reasonable exposure to the market, where both the seller and the buyer are willing, are not acting under compulsion, and are reasonably well informed of the uses and purposes for which it is adapted and for which it is capable of being used.

S.C.Code Ann. § 12–37–930 (Law.Co-op.1976) (Supp.2001). For real property, this provision means that real property should have an assessed value that reflects the property's market value. *See Long Cove Home Owners' Assoc., Inc. v. Beaufort County Tax Equalization Bd.*, 327 S.C. 135, 488 S.E.2d 857, 861 (1997); *Lindsey v. S. Carolina Tax Comm'n*, 302 S.C. 504, 397 S.E.2d 95, 97 (1990); *see also Reliance Ins. Co. v. Smith*, 327 S.C. 528, 489 S.E.2d 674, 678 (1997) (affirming administrative law judge's conclusion that the cost method was the most accurate approach in an instance where the taxable property in question had improvements that were new or almost new); *Cloyd*, 367 S.E.2d at 173 (affirming circuit court's decision that assessed values were too high because the assessor did not consider a floodway ordinance that negatively impacted the taxable properties' value). The statute also addresses the valuation of personal property for tax assessment purposes, providing that the fair market value of a manufacturer's machinery and equipment used in the conduct of the manufacturer's business "must be determined by reducing the original cost by an annual allowance for depreciation as stated in the

---

**8.** Binding authority indicates that, regarding state tax liability, the burden of proof on a tax claim in bankruptcy is based upon substantive state law. *See Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 26, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000); *see also Internal Revenue Serv. v. Levy (In re Landbank Equity Corp.)*,

973 F.2d 265, 269–70 (4th Cir.1992) (holding that, in the context of a debtor's objection to the Internal Revenue Service's tax claim, the Internal Revenue Code places the burden of proof on the taxpayer and nothing in the Bankruptcy Code supplants the substantive federal law in this context).

following schedule."[9] S.C.Code Ann. § 12–37–930 (Law.Co-op.1976) (Supp. 2001). The statute further provides,

> [T]he department, after examination of the relevant facts, may permit an adjustment in the percentage allowance, with the total allowance not to exceed twenty-five percent, on account of extraordinary obsolescence. The department may set forth a depreciation allowance, instead of the depreciation allowance provided in this section, not to exceed twenty-five percent where the taxpayer can provide relevant data concerning a useful life of the machinery and equipment which is different from the period shown in this section.

*Id.*

█ Plaintiff argues that the true value of the taxable real and personal properties is reflected in the § 363 sales, which, according to Plaintiff, occurred after reasonable exposure to the market and with neither the buyer nor the seller acting under compulsion. Indeed, Plaintiff argues it reasonably exposed the taxable properties to the market by contacting used textile machinery companies for the sale of machinery and equipment, engaging a real estate company to market the real property, and noticing the proposed sales to all of Plaintiff's creditors and other parties in interest. In addition, Plaintiff argues the buyers acted without compulsion as they freely and willingly extended their offers to purchase. Moreover, Plain-

tiff asserts it acted without compulsion as it merely sought to achieve the maximum value for the properties by selling them quickly before the depressed textile market deteriorated further and before the equipment was damaged by the winter weather.[10]

Applying Plaintiff's argument to S.C.Code Ann. § 12–37–930 (Law.Co-op.1976) (Supp.2001), the Court concludes it cannot grant the Plaintiff's Motion as to the taxes that are based upon the properties sold in the Gibbs Sale because Plaintiff has not shown that it is entitled to a judgment as a matter of law. The Court reaches this conclusion for three reasons. First, Plaintiff relies exclusively on the § 363 sale as evidence of the real and personal properties' true value; however, this sale occurred eleven months after the date Defendants valued the properties and assessed taxes accordingly on December 31, 2000. *See* S.C.Code Ann. § 12–49–20 (Law.Co-op.1976) (providing that, as of December 31, a first lien shall attach to all real and personal property for taxes to be paid during the following year); *Lindsey v. S. Carolina Tax Comm'n,* 302 S.C. 274, 395 S.E.2d 184, 185 n. 1 (1990) (noting that the pertinent valuation date for a given tax year is December 31 of the preceding year); *Belk Dep't. Stores,* 191 S.E.2d at 146 (noting that all of the parties agree that the correct assessment date is December 31 of the preceding year). Although the sale is relevant evidence of the taxable properties' value, Plaintiff presents no evi-

---

9. In the context of the assessment of property taxes, a manufacturer is defined as every person engaged in making, fabricating, or changing things into new forms for use or in refining, rectifying, or combining different materials for use. *See* S.C.Code Ann. § 12–37–1310 (Law.Co-op.1976). As Plaintiff formerly operated a textile business, the Court concludes Plaintiff was a manufacturer for purposes of South Carolina's statutes regarding the assessment of property taxes.

10. According to Plaintiff, the equipment generated heat for the plants, and the plants had no other source for heat. Plaintiff feared the equipment might deteriorate during the winter as Plaintiff had no reasonable means of heating the plants and preserving the equipment.

dence indicating that, when the taxes were assessed, Defendants incorrectly valued the taxable properties. Instead, Plaintiff's evidence focuses on the taxable properties' value eleven months after Defendants' valued them for assessment purposes. The span of time between the evidence and the date of assessment weakens Plaintiff's argument, especially in light of the fact that the assessments are presumed to be correct. As a result, the Court is dubious of relying exclusively on the bankruptcy sale that occurred in November 2001 to conclude that the valuations of December 31, 2000 are incorrect. Further, if the Court were to accept Plaintiff's argument that the quick sale was reasonable in light of the rapidly deteriorating textile market and thereby allowed Plaintiff to maximize the value of its plants and equipment, the Court would have to minimize the import of evidence of the Gibbs Sale. In the Court's view, if the textile market were in such a severe decline, it would seem that a valuation reached in November 2001 from a sale or an appraisal may be significantly less than a similar valuation occurring on December 31, 2000 before the market had eleven additional months to worsen further. Consequently, in this case, the Court believes that evidence relating to a sale taking place eleven months after the assessment date is not the most accurate indicator of the property's value as of the assessment date.

Even if the Court accepted Plaintiff's argument that the Gibbs Sale represents the true value of the taxable real and personal property, Plaintiff's evidence does not permit the Court to determine whether the individual counties accurately valued the properties pursuant to state law. Indeed, the Gibbs Sale involved the sale of parcels of real property located in Spartanburg, Pickens, and Anderson Counties. The Gibbs Sale also included the sale of separate items of personal property located in Spartanburg and Pickens Counties. In the sales price, however, neither Plaintiff nor the buyer itemized or allocated the purchase price to reflect what Plaintiff was receiving for specific real and personal properties. Likewise, the sales price did not reflect an allocation or itemization of value for real or personal property among the three counties with taxes at issue in this adversary proceeding. Instead, the sales price is a lump sum for different parcels and pieces of real and personal property that Defendants taxed in one way or another. Because of the method in which the Gibbs Sale was structured, the Court is unable to determine the value received for property located within a particular county, compare it to Defendants' valuation, and then decide whether Defendants over-valued or correctly valued the property for tax assessment purposes. To illustrate, the Court is unable to discern how much Plaintiff received from the Gibbs Sale for its real property located in Spartanburg County and then compare it to the values Spartanburg County assessed Plaintiff for its real property because the lump sum sales price also includes real property located in Pickens and Anderson Counties as well as personal property located in Spartanburg and Pickens Counties. In the Court's view, this comparison process is a crucial step in deciding whether Defendants over-valued the taxable properties. Indeed, this point is critical because, although the assessments are presumed correct, it is conceivable that one county taxing authority could have over-valued property while the other two Defendants correctly valued the property and therefore make a significant difference in the taxes to be collected by the respective counties. With the evidence before it, the Court is unable to make this comparison; consequently, the Court believes Plaintiff did not prove that the un-

disputed facts as to the Gibbs Sale indicate it is entitled to relief as a matter of law. Moreover, the Court concludes that this lack of evidence prevents a reasonable jury from returning a verdict for Plaintiff; as such, it grants Defendants' Motion for Summary Judgment as to the Gibbs Sale.[11]

 As to the Coker Sale, however, the facts and circumstances do not allow the Court to conclude that Defendant Anderson County prevails at summary judgment. Plaintiff negotiated the Coker Sale prepetition and entered into a contract for the sale of the Starr Plant's machinery and equipment on ·May 4, 2001. Although the value reflected by the sales price does not coincide with Anderson County's valuation of December 31, 2000, the contract was entered prior to the bankruptcy and the threat of the approaching winter months and is significantly closer to the valuation date than the Gibbs Sale was. Finally, the Coker Sale allows the Court to directly compare the sale of only one type of property (personal) that is located exclusively in Anderson County ($1,250,000.00) with the assessment value ($1,592,381.00).

At this point, Plaintiff argues that the Court can simply compare the sales price with the assessed value, conclude that Anderson County's valuation of personal property is inflated, and reduce the taxes based upon a value reflected in the § 363 sale. If the property at issue were real property, the Court may accept Plaintiff's analysis at the summary judgment stage; however, the property at issue is machinery and equipment. Because the property

is personal, Anderson County argues that S.C.Code Ann. § 12–37–930 (Law.Co-op.1976) (Supp.2001) is mandatory in providing that the fair market value of a manufacturer's machinery and equipment for taxation purposes is based upon the statute's depreciation schedule. As a result of the mandatory depreciation schedule, Anderson County asserts that Plaintiff cannot rely on the Coker Sale as evidence of the taxable properties' value but that Plaintiff must show that Anderson County incorrectly valued the property or incorrectly taxed Plaintiff and that Plaintiff has failed to present evidence to prove these points.

Interpreting S.C.Code Ann. § 12–37–930 (Law.Co-op.1976) (Supp.2001), the Court concludes that Plaintiff is not completely precluded from pursuing its fair market value argument based upon a freely negotiated sale where neither the buyer nor the seller is acting under compulsion. Although the statute provides that the fair market value of a manufacturer's machinery and equipment "must be determined by reducing the original cost by an annual allowance for depreciation as stated in the following schedule," the Court believes that the law suggests that the depreciation schedule can be departed from under certain circumstances and has some degree of flexibility. S.C.Code Ann. § 12–37–930 (Law.Co-op.1976) (Supp.2001). Indeed, following the depreciation schedule, the statute provides that the percentage of the depreciation can be increased up to 25% on account of "extraordinary obsolescence" or where "the taxpayer can provide relevant

---

**11.** The Court notes that, at the hearing, Plaintiff indicated it wanted to resolve its Complaint at the summary judgment stage. Further, Plaintiff also admitted that it could produce no evidence allocating the purchase price for the separate parcels and pieces of real and personal property located in the different counties any further than what the Gibbs Sales Order already provides. Likewise, Plaintiff presented no testimony or evidence from the Gibbs Sales' purchaser or its agent that defined or allocated the values with more explanation than what the Gibbs Sales Order provides. Therefore, there appears no need to submit these issues for further trial.

data concerning a useful life of the machinery or equipment that is different from the period shown in the depreciation schedule." *Id.* In the Court's view, this final section of the statute offers flexibility as the depreciation percentage can be altered to some extent in appropriate circumstances. In essence, this final section operates as a type of safeguard and indicates that valuation of personal property for taxation purposes is not in all instances absolutely wedded to the depreciation schedule in all cases.

A decision entered by the Supreme Court of South Carolina augments this conclusion. In *South Carolina Tax Commission v. South Carolina Tax Board of Review*, 278 S.C. 556, 299 S.E.2d 489 (1983), the court considered the argument that the South Carolina Tax Board of Review exceeded its authority by departing from the depreciation schedule and valuing personal property lower than what the depreciation schedule provided. The Supreme Court agreed and held that S.C.Code Ann. § 12–37–930 (Law.Co-op.1976) is the method for valuing property and that this method must be followed. *See S. Carolina Tax Comm'n*, 299 S.E.2d at 492. In addition, the court held that, notwithstanding this conclusion, the taxpayer failed to carry its burden that the statutorily prescribed method over-valued the personal property. *See id.* The court reasoned that, under a fair market value approach, the taxpayer must consider all relevant factors that have a material effect regarding valuation to overcome the presumption that the assessed valuation is correct. To this Court, the Supreme Court's second analysis of the fair market value also indicates that the depreciation schedule can be departed from in certain instances; otherwise, the Supreme Court would have simply concluded that the depreciation schedule is the final word and not even considered the fair market value evidence and argument.

While the Court agrees to some extent with Plaintiff that it can depart from the depreciation schedule of S.C.Code Ann. § 12–37–930 (Law.Co-op.1976) (Supp.2001) in certain circumstances, the Court does not believe it has the necessary undisputed facts before it to determine that it should depart from the depreciation schedule and grant summary judgment. Indeed, the Court believes the record before it does not indicate the age of the equipment and machines, their original cost, and special circumstances that affects the useful life or obsolescence of this personal property as S.C.Code Ann. § 12–37–930 suggests. Moreover, the *South Carolina Tax Commission* Court indicated that a taxpayer must consider all relevant factors that have a material effect regarding valuation to overcome the presumption that the assessed value is correct, and, in this instance, this Court believes it may be necessary to present expert testimony regarding such factors as the useful life of the machinery and equipment, the effect of the declining textile market, the commercial reasonableness of the sale (specifically, whether the equipment was marketed appropriately and in a manner to obtain the appropriate value for it), or perhaps even an appraisal of the personal properties' value as of December 31, 2000. Accordingly, the Court denies the Plaintiff's Motion; however, as this section regarding the Coker Sale illustrates, the Court must also deny Defendants' Motion for Summary Judgment as the evidence in the light most favorable to Plaintiff indicates that, upon proof of certain factors, Plaintiff could prevail at trial.

## CONCLUSION

From the arguments discussed above, it is, therefore,

**ORDERED** that Defendants' Motion for Summary Judgment is granted as to the taxes based upon the real and personal property Plaintiff sold in the Gibbs Sale. All of the evidence in a light most favorable to Plaintiff indicates that Plaintiff did not and cannot establish an essential element of its case on which it bears the burden of proof.

**IT IS FURTHER ORDERED** that both Plaintiff's and Defendants' Motions for Summary Judgment are denied as to the taxes based upon personal property Plaintiff sold in the Coker Sale. The adversary proceeding as between Plaintiff and Anderson County will continue, if not otherwise resolved, to trial to resolve the Complaint regarding the taxes of the personal property that was sold through the Coker Sale.

**AND IT IS SO ORDERED.**