1551

HAMPTON NURSING CENTER, Cypress Nursing Center, Bayview Nursing Center, Appellants v. The STATE HEALTH AND HUMAN SERVICES FINANCE COMMISSION, Respondent.

(399 S.E. (2d) 434)

Court of Appeals

*David M. Rogers,* of *Carter, Smith, Merriam, Rogers & Traxler,* Greer, *for appellants.*

*W. Allen Nickles, III,* of *Gergel, Burnette, Nickles, Grant & Ouzts,* Columbia, *for respondent.*

Heard Sept. 12, 1990.

Decided Oct. 8, 1990.

SANDERS, Chief Judge:

This is an appeal by three nursing homes from an order of the Circuit Court affirming a final administrative decision by a hearing panel of the South Carolina Health and Human Services Finance Commission. The decision consolidated separate appeals by the nursing homes challenging certain audit adjustments. In each case, the amount of reimbursable interest

expense under the Medicaid program was reduced by the amount of available interest income imputed to the nursing home based on certain interest-free shareholder loans. We affirm for essentially the same reasons given by the Court in its order.

Part I of this opinion is, in large measure, a restatement of the order of the Circuit Court. Part II is a summary of our reasons for affirming the order. Part III disposes of two issues not addressed by the Court in its order.

## I.

The sole issue before the Court is whether Medicaid laws and regulations allow offset against otherwise reimbursable interest expense by the amount of interest income available to a provider of Medicaid services but not actually received by the provider. For the following reasons, the final administrative decision implementing this offset is affirmed.

Hampton Nursing Center, Cypress Nursing Center and Bayview Nursing Center are private, for-profit nursing homes which have agreed to provide Medicaid services through the South Carolina Medicaid program. The standard contract entered into by each of them provides for prospective reimbursement of costs, subject to subsequent audit examination. The nursing homes each claimed reimbursement for interest expense incurred in delivering Medicaid services. After borrowing the funds which resulted in the interest expense, the nursing homes made interest-free loans to their shareholders. The amounts of the interest-free loans were substantial, totaling more than 1.5 million dollars. It is undisputed that the funds were borrowed for necessary equipment and construction, and it is not suggested that any portion of the funds were used in making the interest-free loans. The interest-free loans were payable on demand.

Following audit review, each nursing home was notified through an audit report that otherwise reimbursable interest expense would be reduced by the value of the interest-free loans to shareholders. The values assigned to these loans were calculated by using a weighted average of the interest expense incurred by each facility. Using this basis, auditors determined the value of the loans by the interest the nursing homes had been willing to pay for the same amount of debt.

Following issuance of the audit reports, the nursing homes advised the auditors that certain of the debt instruments contained prepayment penalties. The auditors thereafter offered to determine the value of the loans based on certain money market rates prevailing when the loans were made. The nursing homes, however, declined the offer and accepted the original basis for determining the value of the loans. Therefore, the value of the interest-free shareholder loans is not an issue before this Court. Rather, the sole issue is whether Medicaid laws and regulations allow the offset of available interest income against interest expense.

The South Carolina Health and Human Services Finance Commission has the responsibility to administer Medicaid in this State. *See* S.C. Code Ann. §§ 44-6-10 to -320 (1985, Supp. 1989). In accord with this responsibility and pursuant to contract, nursing homes are periodically audited. Audit disallowances which identify overpayment of public funds are subject to administrative review by a hearing panel of the Commission. By contract and state law, administrative determinations of the hearing panel are subject to judicial review.

The South Carolina Administrative Procedure Act establishes specific guidelines for judicial review of the decisions of state agencies. S.C. Code Ann. § 1-23-380 (1986). The Legislature has specifically provided that the Act is specifically applicable to appeals from decisions by the Commission. S.C. Code Ann. § 44-6-190 (Supp. 1989). The Act provides that a reviewing court, "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." S.C. Code Ann. § 1-23-380(g) (1986). It further provides that an agency determination may be judicially reversed or modified only:

> if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Affected by other error of law;
> (5) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

In keeping with these legislatively established parameters, our Supreme Court has held that a decision by a state agency "upon which reasonable men might differ will not be set aside." *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 136, 276 S.E. (2d) 304, 307 (1981).

Moreover, because the Commission has been designated as the single state agency for implementation of Medicaid, great deference must be accorded interpretations by the agency of Medicaid laws and regulations. *See S.C. Police Officers Retirement Sys. v. City of Spartanburg*, ___ S.C. ___ , 391 S.E. (2d) 239 (1990). This deference is consistently observed by federal courts called upon to review administrative decisions in the corresponding field of Medicare reimbursement. *See St. Paul-Ramsey Medical Center v. Bowen*, 816 F. (2d) 417 (8th Cir. 1987); *Bedford Medical Center v. Heckler*, 766 F. (2d) 321 (7th Cir. 1985); *Cheshire Hosp. v. New Hampshire—Vermont Hospitalization Service, Inc.*, 689 F. (2d) 1112 (1st Cir. 1982); *Psychiatric Inst. of Washington, D.C. Inc. v. Schweiker*, 669 F. (2d) 812 (D.C. Cir. 1981).

Although the issue before us is a matter of first impression with regard to the South Carolina Medicaid program, as discussed more fully hereafter, federal courts have allowed offset of available interest income against interest expense. *See Forsyth County Hosp. Auth., Inc. v. Bowen*, 856 F. (2d) 668 (4th Cir. 1988); *Research Medical Center v. Schweiker*, 684 F. (2d) 599 (8th Cir. 1982); *Portland Adventist Medical Center v. Heckler*, 561 F. Supp. 1092 (D.D.C. 1983); *Gosman v. United States*, 215 Ct. Cl. 617, 573 F. (2d) 31 (1978).

Reimbursement of costs incurred by nursing homes providing Medicaid services are governed by contracts which incorporate Medicare statutes and regulations. The contracts also incorporate guidelines provided by a government publication entitled the Provider Reimbursement Manual. A cardinal principle of Medicare and Medicaid law is that reasonable costs are allowable, "excluding therefrom any part of incurred cost found to be necessary." 42 U.S.C. § 1395x(v)(1)(A) (1982).

In the area of interest expense, such costs are deemed to be necessary only where a loan is made to "satisfy a financial need of the provider." 42 C.F.R. § 413.153(b)(2)(i) (1990). Furthermore, the loan must be made "for a purpose reasonably related to patient care." *Id.* at § 413.153(b)(2)(ii). In addition, interest expense is "reduced by investment income." *Id.* at § 413.153(b)(2)(iii); Prov. Reimb. Man., Part I, Medicare & Medicaid Guide (CCH) § 202.2 at ¶4920.

There are, therefore, two basic criteria for the reimbursement of interest. First, the expense must be necessary to a financial need of the nursing home, reasonably related to patient care. Second, otherwise reimbursable interest expense must be reduced by available investment income. Here, the hearing panel determined that these nursing homes had access to investment income through funds which were given to shareholders by way of interest-free loans. Thus, the hearing panel concluded that their interest expense should be reduced by the value of these loans.

These nursing homes are not the first health care providers to be denied reimbursement as a result of having made interest-free loans. In *Gosman*, a health care provider made interest-free loans to related enterprises. The loans were made before the provider began participating in the Medicaid program. The Court, nevertheless, affirmed a decision to reduce otherwise reimbursable interest expense because the funds loaned could have been used to reduce the need for mortgage financing. In *Portland*, a provider made interest-free loans to a subsidiary while borrowing funds for capital expansion. The Court found that a portion of the funds borrowed were not necessary and reduced the reimbursement for interest expense by the amount of additional interest costs incurred due to the decision to loan funds interest free instead of applying the funds to reduce debt. The Court reasoned that to rule otherwise would "encourage providers to borrow funds, rather than utilize existing working capital for building new facilities, because the rate on the borrowed funds would be subsidized by the Medicare reimbursement of the interest expense." *Portland*, 561 F. Supp. at 1097.

The nursing homes attempt to distinguish these cases by pointing out that, in each of them, the health care provider made the interest-free loans before, or con-

temporaneous with, borrowing the funds which resulted in the interest expense for which reimbursement was claimed. This is a distinction without a difference. The nursing homes acknowledge that the interest-free loans they made to their shareholders are repayable on demand. Thus, they could have at any time demanded the return of these funds. The record, therefore, supports the factual determination by the hearing panel that the nursing homes retained access to these funds for purposes of investment or debt reduction. It is the availability of income, not its actual receipt, which triggers the reduction of reimbursement. *See Forsyth County Hosp. Auth.*, 856 F. (2d) 668; *Research Medical Center*, 684 F. (2d) 599. The nursing homes cite, among other authority, *Pioneer Hosp. v. The Travelers Ins. Co.*, Medicare & Medicaid Guide (CCH) ¶32,400 (PRRB Hearing Dec. No. 83-D23, Jan. 7, 1983). There, unlike here, the funds advanced by the health care provider were partnership distributions, not demand loans. Thus, the health care provider, unlike the nursing homes in the instant case, did not retain access to the funds.

As an alternative basis for affirming the offset against ■ interest expense, the hearing panel noted that the Provider Reimbursement Manual requires a health care provider to be "prudent and cost-conscious." Prov. Reimb. Man., Part I, Medicare & Medicaid Guide (CCH) § 2103 at ¶5868. The hearing panel reasonably concluded that the conduct engaged in by the nursing homes is not the kind of conduct which would be expected of someone who is prudent and cost-conscious. Additionally, the principle that Medicaid reimbursement must be related to patient care would be compromised if nursing homes were permitted to defray the cost of interest-free loans through public reimbursement of interest expense.

The nursing homes argue that generally accepted accounting principles do not require that interest be imputed to shareholder loans. In support of their argument, they offered the testimony of two certified public accountants. Significantly, both witnesses explicitly disavowed any knowledge of the Medicaid program. Instead, they both testified hypothetically, without claiming knowledge of the underlying principles which govern the reporting and reimbursement of Medicaid costs. The nursing homes presented a third witness who testi-

fied she had been "involved extensively in the Medicare and Medicaid program since 1968." She was asked whether there is "any rule that allows for the imputing of interest or the creation of phantom interest where there is in fact, no interest." She replied, "Not to my knowledge." In response, a certified public accountant, employed as Director of Federal Audits for the Office of the State Auditor, testified that generally accepted accounting principles do not prohibit imputing interest income in the proper context. He further testified that an offset based on available interest income is consistent with the guiding principles of the Medicaid program. The weight to be accorded the testimony of these witnesses is within the province of the hearing panel, not this Court. *South Carolina Dep't of Mental Retardation v. Glenn*, 291 S.C. 279, 353 S.E. (2d) 284 (1987). Moreover, accounting principles, even if generally accepted, may not be applied in derogation of Medicaid reimbursement standards. *See Sun Towers, Inc. v. Heckler*, 725 F. (2d) 315 (5th Cir. 1984) (generally accepted accounting principles do not control the determination of reasonable costs).

The Medicaid program restricts reimbursement to those costs which are reasonable and necessary. Interest expense is reduced by investment income. It is the conclusion of this Court that the final administrative decision of the hearing panel which offsets the value of the interest-free loans against otherwise reimbursable interest expense of the nursing homes constitutes a reasonable interpretation of the guiding principles of the Medicaid program. Neither the State nor this Court is in a position to dictate to nursing homes the manner in which they utilize their funds. Nevertheless, when a nursing home is a participant in the Medicaid program and has access to funds, such as funds represented by interest-free demand loans made to shareholders, it is reasonable and appropriate for the reimbursement of their interest expense to be reduced by the income available by the prudent use of such funds. Such an offset through the audit process merely returns to the State excess payments of public funds to which the nursing homes are not entitled.

## II.

It all comes down to simply this: Generally speaking, nurs-

ing homes, like other private property owners, have every right to do whatever they want with their property. This includes the right to make interest-free loans to their shareholders. Nobody suggests denying them this right. They also have the statutory right, under the Medicaid program, to be reimbursed by the government for reasonable costs, provided that the costs incurred are not "unnecessary." Included among these costs is necessary interest expense. Nobody seeks to deny them this right either. But where, as here, a nursing home foregoes interest income, while at the same time incurring interest expense, the expense incurred, at least to the extent of the income foregone, is unnecessary. The nursing homes continued to incur interest expense, despite the fact they had a million and a half dollars available to them by the simple expediency of demanding payment of the interest-free loans they had previously made to their shareholders. They are like a man who continues to pay interest on a loan, despite the fact he has a million and a half dollars on deposit in a non-interest bearing checking account. There is nothing legally wrong with his continuing to incur the interest expense, but he can scarcely claim it was necessary for him to have done so. For these reasons, we conclude that the nursing homes have no right to cast the whole burden of their interest expense upon the taxpayers, whose burdens are already legion.

### III.

The nursing homes attempt to argue two additional issues on appeal. Neither issue was ruled on by the Circuit Court in its order, and it does not appear that the nursing homes made any motion pursuant to Rule 59(e), SCRCP. Therefore, the issues are not properly preserved for appeal. *Capital View Fire Dist. v. County of Richland,* 297 S.C. 359, 377 S.E. (2d) 122 (Ct. App. 1989).

Accordingly, the order of the Circuit Court is

Affirmed.

GARDNER and GOOLSBY, JJ., concur.