24285

BYERLY HOSPITAL and Loris Community Hospital, Appellants v. SOUTH CAROLINA STATE HEALTH AND HUMAN SERVICES FINANCE COMMISSION, Respondent.

(460 S.E. (2d) 383)

Supreme Court

---

*Harold W. Jacobs* of *Nexsen, Pruet, Jacobs and Pollard,* Columbia, *for appellant.*

*George R. Burnett* of the *Office of the Gen. Counsel, Health and Human Services Finance Com'n,* Columbia, *for respondent.*

Heard May 2, 1995.

Decided July 24, 1995; Reh. Den. Aug. 24, 1995.

WALLER, Justice:

Byerly Hospital and Loris Community Hospital (Hospitals) appeal a Circuit Court order affirming the Health and Human Services Finance Commission's (Commission) ruling that "bad debt" was not includable in "total operating expenses" for fiscal year 1989-1990, for purposes of calculating Hospitals' entitlement to Disproportionate Share Pool reimbursement payments from Medicaid. We affirm.

## FACTS

The Commission administers the South Carolina Medicaid Program. Medicaid, in addition to paying claims, reimburses certain qualifying hospitals which serve a disproportionate share of low-income and indigent Medicaid patients. The program is known as the Disproportionate Share Pool Program (DSP). In September 1990, Commission adopted a "monthly disproportionate share plan," effective July 1990, which calcu-

lated each hospital's entitlement to reimbursement upon its "total operating expenses."[1]

It is undisputed that, prior to fiscal year 1990, "Generally Accepted Accounting Principles" (GAAP) as applied in the Health Care industry, treated "bad debt" as a "deduction from revenue," and excluded "bad debt" from the calculation of "total operating expenses." In 1990, the American Institute of Certified Public Accountants (AICPA) revised its manual[2] to provide that "bad debt" should be treated as a "total operating expense" rather than a deduction from revenue. The manual provides that it is effective for audits of financial statements "for periods beginning on or after July 15, 1990."

In 1990, Hospitals submitted DSP reimbursement forms to Commission, treating "bad debt" as a "deduction from revenue." In 1993, Hospitals submitted amended DSP reimbursement forms to Commission, this time including "bad debts" as operating expenses for fiscal year 1990. The Commission notified Hospitals that the portion of DSP payments attributable to "bad debt" would be disallowed.[3] Hospitals appealed Commission's determination to the Administrative Hearing Officer who affirmed the Commission, finding that under the AICPA handbook, the GAAP treatment of "bad debt" as an "operating expense" was not effective until July 15, 1995 so as to be inapplicable to Hospitals' fiscal year 1990, which had begun in October, 1989.[4] Circuit Court affirmed.

---

[1] Commission also had in effect another DSP reimbursement plan, "Hospital specific add-on," under which reimbursement was calculated according to a hospital's "allowable costs."

[2] The handbook is also referred to at times by the parties as the APHCS (Audit and Accounting Guide, Audits of Providers of Health Care Services).

[3] As they were not accompanied by documentation, the Commission initially accepted the amended forms and forwarded the respective DSP payments. When documentation was subsequently received by Commission, it realized Hospitals had included the "bad debt."

[4] The Hearing Officer ruled, in addition, that under 42 CFR § 413.80, Commission properly excluded bad debt from total operating expenses in determining Hospitals' share of DSP payments. Commission no longer utilizes this DSP program and, in any event, the present case involves only fiscal year 1990. Accordingly, in light of our holding, we need not address the merits of this ruling.

*ISSUE*

The sole issue we need address if whether Commission was required to accept early implementation of the GAAP amendment.

*DISCUSSION*

Prior to July, 1990, the AICPA handbook treated bad debt as a deduction from revenue, rather than an inclusion in total operating expenses. The handbook was amended in 1990 to include bad debt as a total operating expense; the "Effective Date and Transition" paragraph provides as follows:

> The provisions of this guide are effective for audits of financial statements for periods beginning on or after July 15, 1990.

The Deputy State Auditor, Margaret Stillwell, testified the provision meant the change would be applied to the beginning of the next fiscal year, beginning in October, 1990. Although she testified it would not have been improper for a hospital to rely upon the guide prior to that time, she testified it would not have been in accordance with the change and she would have expected bad debt to have been presented for 1990 in accordance with the prior AICPA guide.

Hospitals presented the testimony of two experts. Chibarro, a CPA with Ernst & Young, testified that, notwithstanding the July 15, 1990 effective date in the guide, it was permissible, and even encouraged, for hospitals to include bad debt as an element of operating expense in their fiscal year 1990 statements.[5] However, he acknowledged that the guide would only be required to be implemented for periods beginning July 15, 1990. Hospitals' other expert, Hoppe, also testified that early implementation of the amendment was permissible under GAAP.

The Hearing Officer found that the AICPA guide clearly stated it was effective July 15, 1990. He found, further, notwithstanding the testimony of Chibarro and Hoppe, that

---

[5] Notwithstanding this assertion, Chibarro conceded that Ernst & Young had prepared Loris Hospital's financial statement for fiscal year 1989-90 in November, 1990, and had treated bad debt as a deduction from revenue rather than a "total operating expense."

the revised guidelines contained no mention of early implementation. In the absence of such written instructions, the Hearing Officer relied upon the unambiguous statement in the guidebook to conclude that the amendment was inapplicable and, accordingly, bad debt was not an operating expense for the period involved in this matter. Circuit court affirmed, finding that the testimony of Chibarro and Hoppe was contradicted by the very handbook on which they relied.

At oral argument before this Court, the parties conceded that whether the transitional period for implementing the amendment to GAAP applies to the instant case presents a factual issue. Accordingly, as this is an appeal from the decision of an administrative agency, we are governed by the Administrative Procedures Act. We must affirm if the decision of the agency is supported by substantial evidence, and we may not substitute our judgment for that of the agency upon questions as to which there is room for a difference of intelligent opinion. *Hamm, etc. v. SCPSC, et al.*, 315 S.C. 119, 432 S.E. (2d) 454 (1993). Moreover, because the Commission has been designated as the single state agency for implementation of Medicaid, great deference must be accorded its interpretations of Medicaid laws and regulations. *Hampton Nursing Ctr. v. Health & Human Services*, 303 S.C. 143, 399 S.E. (2d) 434 (Ct. App. 1990).

Nothing in the record requires Commission to implement the amended GAAP provision prior to July 15, 1990. To the contrary, the plain language of the handbook, when coupled with the testimony of Chibarro and Hoppe that early implementation was permissible, leads to the inescapable conclusion that Commission was not required to accept early implementation of the GAAP amendment. Accordingly, we find substantial evidence supporting Commission's determination Hospitals were not required to be reimbursed in accordance with the GAAP amendment for fiscal year 1990.

The judgment below is

Affirmed.

FINNEY, C.J., and TOAL, MOORE and BURNETT, JJ., concur.