567 S.E.2d 501

**Howitt S. SMITH and Hazeleen P. Smith, Respondents,**

v.

**NEWBERRY COUNTY ASSESSOR, Appellant.**

**No. 3513.**

Court of Appeals of South Carolina.

Submitted May 6, 2002.

Decided June 3, 2002.

Rehearing Denied Aug. 22, 2002.

Hardwick Stuart, Jr. of Berry, Quackenbush & Stuart, of Columbia, for appellant.

John S. Nichols, of Bluestein & Nichols, of Columbia, for respondents.

HEARN, C.J.

The Newberry County Tax Assessor (Assessor) appeals from a circuit court order affirming the Administrative Law Judge's (ALJ) valuation of property at $269 per waterfront foot. We affirm.[1]

## FACTS

In 1996 Howitt and Hazeleen Smith, purchased a lot and two thirds of an adjoining lot located in Summerset Bay development on Lake Greenwood for $76,000. The Smiths testified that they knew $76,000 was higher than the amount paid for the most attractive lot in the development, but they were not concerned because they purchased their property for sentimental reasons and were not interested in resale.

For the 1999 tax year, Assessor valued the Smiths' property at $85,800. To reach this figure, she conducted a mass appraisal analyzing the resale information for lots contained within Summerset Bay during 1997 and 1998.[2] After review-

---

1. We affirm this case without oral argument pursuant to Rule 215, SCACR.

2. A mass appraisal method is one that looks at the sales from a region to determine the value per square foot and applies that value to the square footage of the assessed property.

ing the resale values, she determined that the information showed an annual 4% upward trend in lakefront property values and arrived at a value of $350 per waterfront foot. The $350 valuation fell within the Department of Revenue standards and the Department of Revenue approved the valuation. Assessor then multiplied the Smith's 258 feet [3] of waterfront by $350 per foot to arrive at $85,800.

The Smiths appealed Assessor's valuation to the Newberry County Tax Appeals and Review Board. The Board accepted the value offered by Assessor and denied any change to the valuation of the property. The Smiths then sought review of the Board's decision in front of an ALJ.

The Smiths' independent appraiser, Scott Wishart, testified at the ALJ hearing that he assessed the value of the property by using the fee appraisal method and conducting a market sales comparison approach.[4] Wishart stated that he identified properties comparable to the Smiths' property within the Summerset Bay development. The properties had similar deed restrictions, they had over 200 feet of waterfront property, and the properties had been sold within 6 to 12 months of the date of his appraisal. Three lots met this criteria.

Wishart testified that the most important component in using a market sales comparison approach is making adjustments to the value of the comparable properties to approximate the value of the property appraised. Wishart stated Comparables 1 and 2 did not require any adjustments and Comparable 3 required a $100 per foot upward adjustment to compensate for its inferior view. After reviewing the sales of the three comparable properties, Wishart valued the Smiths' property at $61,000 based upon a $246 per waterfront foot figure multiplied by 248 feet of waterfront property.

Wishart also performed a regression analysis and found that when a property has more than 200 feet of waterfront, the price per foot decreases to the $240 to $250 range. Wishart

3. A later appraisal revealed that the Smith's actually had 248 feet of waterfront instead of 258 feet.

4. A fee appraisal is a method that looks at the resale value of the individual parcel alone to determine its fair market value.

offered the regression analysis at the ALJ hearing as additional evidence to support his $246 per waterfront foot figure.

The ALJ rejected Assessor's value and found that the Smiths' market sales appraisal was the most accurate evidence of the property's market value because "no individual evaluation was made of the Taxpayers' property," and "[t]he taxpayers' property was not among the lots evaluated for the mass appraisal." The ALJ found that Wishart's Comparable 3 was the best reflection of the value of the Smiths' property; however, he rejected Wishart's $100 per square foot adjustment and used a $120 upward adjustment from Comparable 3. This resulted in a finding of the value for the Smiths' property of $269 per waterfront foot. The ALJ's assessment of the value of the Smiths' property was $66,712 (248 waterfront feet times $269 per waterfront foot).

The Newberry County Tax Assessor appealed the ALJ's findings to the circuit court. The circuit court affirmed the ALJ's decision and dismissed the case. Assessor appeals.

## DISCUSSION

### I. Subject Matter Jurisdiction

■ Assessor argues the ALJ lacked the ability to decide the case at the time of the hearing because the Smiths failed to present all of their evidence supporting their appraisal value before the county board. We disagree. A taxpayer who is aggrieved by the Assessor's valuation of his property may appeal the assessment value to the County Board of Assessment Appeals and then to the ALJ Division. S.C.Code Ann. §§ 12–60–2530 through 12–60–2540 (2000). Section 12–60–2540(B) reads in relevant part:

(B). . . . If the taxpayer failed to provide the county board with the facts, law, and other authority supporting his position, he shall provide the representative of the county at the hearing with the facts, law, and other authority he failed to present to the county board earlier. The [ALJ] shall then remand the case to the county board for reconsideration in light of the new facts or issues *unless the representative of the county at the hearing elects to forego the remand.*

(emphasis added).

Assessor argues that when the Smiths presented Wishart's regression analysis as evidence supporting his $246 appraisal

value for the first time at the hearing in front of the ALJ, the ALJ should have remanded the matter back to the County Board of Appeals. After reviewing the record, we find that Assessor failed to object to the admission of evidence or ask the ALJ to remand the matter back to the County Board. Thus, we believe Assessor elected to forgo the remand. Moreover, because there was no objection to the admission of this testimony, we find this issue is not properly preserved. *Holy Loch Distribs., Inc. v. Hitchcock*, 340 S.C. 20, 24, 531 S.E.2d 282, 284 (2000) ("In order to preserve an issue for appellate review, the issue must have been raised to and ruled upon by the trial court.").

## II. ALJ's Valuation of the Property

Assessor next challenges the circuit court's order affirming the ALJ's decision on three grounds. First, Assessor argues the ALJ lacked the ability to select $269 per waterfront foot as the proper value because neither expert testified that the value of the property should be assessed at $269 and, if the ALJ chose to ignore the expert's proposed values, he should have used the purchase price of the property as the fair market value. Second, she claims there was no substantial evidence in the record to support the ALJ's $269 figure. Lastly, Assessor argues that the ALJ erred when he ruled the market sales comparison approach was the proper valuation method.

### A. Standard of Review

■ The case reached the ALJ as a request for judicial review of the County Board of Assessment Appeals decision upholding Assessor's valuation. When a tax assessment case reaches the ALJ in this posture, the proceeding in front of the ALJ is a *de novo* hearing. *See Reliance Ins. Co. v. Smith*, 327 S.C. 528, 534, 489 S.E.2d 674, 677 (Ct.App.1997) ("[A]lthough a case involving a property tax assessment reaches the ALJ in the posture of an appeal, the ALJ is not sitting in an appellate capacity and is not restricted to a review of the decision below. Instead, the proceeding before the ALJ is in the nature of a *de novo* hearing.").

■ This court must affirm an administrative agency's decision if the decision is supported by substantial evidence and

we may not substitute our judgment for that of the agency upon questions for which there is room for difference of intelligent opinion. *Byerly Hosp. v. South Carolina State Health & Human Servs. Fin. Comm'n,* 319 S.C. 225, 229, 460 S.E.2d 383, 385–86 (1995). "Substantial evidence is not a mere scintilla of evidence, but evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached." *Grayson v. Carter Rhoad Furniture,* 317 S.C. 306, 309, 454 S.E.2d 320, 321 (1995).

### B. ALJ's Authority to Select Value of Property

■ Assessor first argues that the ALJ should have selected either her $350 figure as the correct value per waterfront foot, or Wishart's $246 value because they are the only experts in this matter. Alternatively, if the ALJ failed to accept the experts' valuations, he should have used the purchase price as the fair market value for the property. We disagree.

In *City of Folly Beach v. Atlantic House Props., Ltd.,* 318 S.C. 450, 458 S.E.2d 426 (1995), the City's appraiser testified the value of Atlantic House's interest in the property was $31,000 while Atlantic House's appraiser testified the value was $642,000. The jury selected $250,000 as the proper value. The supreme court held the jury was free to determine the value of the property within the range of the evidence presented at trial. *Id.* at 452–53, 458 S.E.2d at 427. "The record reflects both appraisers encountered difficulty in determining the value of the property because of the unique nature of Atlantic House's [property]. We find no error in the jury finding the value to be $250,000. The unique nature of the property coupled with expert testimony as to its value allowed the jury to determine the fair market value of the property within the range of the evidence presented at trial." *Id.*

Although the present case does not involve condemnation, we find the analysis of *City of Folly Beach* instructive. When the Smiths purchased all of lot 46 and two-thirds of lot 47 and combined them into one property, they created a new piece of property which had never before been valued in the market. Both appraisers testified regarding the difficulty of assessing the value of an individual piece of property. The ALJ functioned as the finder of fact and his value fell within the range

of values presented by the experts. Therefore, we find no error in the ALJ's valuation.

■ Furthermore, we find no merit to Assessor's argument that the ALJ should have used the purchase price paid by the Smiths as the fair market value when he rejected the experts' values. While the purchase price of the property is some evidence of the fair market value, it is not conclusive. *Belk Dep't Stores v. Taylor*, 259 S.C. 174, 179, 191 S.E.2d 144, 146 (1972). Therefore, the ALJ was not bound by the price paid by the Smiths. The Smiths testified they paid more for their property because of sentimental reasons, and also made decisions regarding the property which would not be normal in the marketplace because they were not concerned with the investment value of the property.

### C. Substantial Evidence in the Record to Support ALJ's Findings

■ Assessor next argues the circuit court erred in affirming the ALJ's valuation because there was no substantial evidence to support his decision. We disagree. The ALJ based his valuation on the price per waterfront foot value from Comparable 3. He added $120 to the price as an upward adjustment to compensate for Comparable 3's inferior sight line, while Wishart adjusted its price upward only $100 per waterfront foot. Assessor argues the ALJ had no basis to independently consider the value of Comparable 3 or to adjust upward by $120.

Assessor's and Wishart's respective values of $350 and $246 formed the range of values. Comparable 3 was the only one of Wishart's three comparable properties involving a sale between two parties which was clearly an arm's length transaction. Wishart's adjustment of the value of Comparable 3 by $100 to compensate for the inferior sight line provided the basis for the ALJ to adjust the value of the property. We find substantial evidence existed in the record to support the ALJ's finding. The adjustment fell within the range of values presented by the experts. Since Comparable 3 was the only property sold which was unquestionably an arm's length transaction, the ALJ did not err by basing the Smiths' property value upon its adjusted value. Wishart provided the basis for

the ALJ to make his upward adjustment to compensate for the inferior sight line of Comparable 3.

### D. Use of Market Sales Comparison Approach

■ Assessor lastly argues the ALJ lacked substantial evidence in the record to use a market sales comparison approach as opposed to the mass appraisal approach and the circuit court erred when it affirmed the ALJ's decision. We disagree. Wishart testified that the only way to assess the fair market value at that particular time was using a market sales comparison approach. Mrs. Smith, also a licensed appraiser, testified that to accurately assess the fair market value of the subject property, an assessor must use comparable properties and make adjustments to compensate for the differences in the land. Even Assessor acknowledged that property could be valued using a fee appraisal approach. Considering that all three appraisers who testified during the hearing acknowledged the validity of using the market sales comparison approach, we find there was substantial evidence in the record to support the ALJ's decision to value the Smiths' property using that approach. Accordingly, the circuit court did not err when it affirmed the ALJ's findings.

**AFFIRMED.**

HUFF and HOWARD, JJ., concur.