603 S.E.2d 412

Timothy R. SPONAR, Respondent,

v.

**SOUTH CAROLINA DEPARTMENT OF
PUBLIC SAFETY, Appellant.**

No. 3847.

Court of Appeals of South Carolina.

Submitted May 12, 2004.
Decided July 19, 2004.
Withdrawn, Substituted, and Refiled Sept. 23, 2004.

C. Cliff Rollins, of Blythewood; and Frank L. Valenta, Jr., of Columbia, for Appellant.

Stephan Victor Futeral, of Mt. Pleasant, for Respondent.

HUFF, J.:

Following his arrest for driving under the influence, Timothy R. Sponar refused to take a Datamaster test. Pursuant to this refusal, the Department of Public Safety (DPS) revoked Sponar's driver's license. Sponar requested an implied consent hearing, after which a DPS Administrative Hearing Officer upheld the suspension. Sponar then appealed this decision to the circuit court, which reversed the suspension. DPS now appeals arguing the circuit court erred by (1) improperly applying the standard of review to reverse the hearing officer's decision and (2) considering Sponar's state of mind at the time he refused to take the Datamaster test. We reverse and reinstate the suspension.

## FACTUAL/PROCEDURAL BACKGROUND

On August 7, 2000, Officer C. Googe of the Mount Pleasant Police Department observed a vehicle traveling at 78 miles per hour in a 55 mile per hour zone and initiated a traffic stop. During the stop, Officer Googe noticed the driver, Sponar, smelled of alcohol and had glassy, bloodshot eyes and slurred speech.

Accordingly, the officer asked Sponar to exit the vehicle and complete a number of field sobriety tests. As Sponar could not properly perform any of the tests, the officer placed him under arrest, advised him of his *Miranda*[1] rights, and transported him to the Mount Pleasant Police Department where he then turned Sponar over to Officer Whitcomb for administration of a Datamaster test.[2]

Upon arrival at the police station, Officer Googe turned Sponar over to Officer Whitcomb so that he could administer the Datamaster test to determine if Sponar's blood alcohol level was within the legal limit. Officer Whitcomb explained to Sponar his *Miranda* rights and then advised him of his

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Officer Googe testified Respondent told him he had "a couple of drinks" at a place called Hanahan's. In addition, after the officer found a six-pack with only one beverage remaining, Sponar admitted to consuming the other five.

implied consent rights, reading them verbatim from the advisement form provided by SLED and providing him with a copy.

During a mandatory twenty-minute waiting period prior to administering the test, Sponar initiated conversation with the officer. Sponar repeatedly asked whether he should take the test or whether he should refuse, and asked the consequences of taking or refusing the test. Officer Whitcomb responded it was not his decision to make and that Respondent would have to decide on his own. Sponar asked whether he would still go to jail if he took the test, and the officer replied that it did not matter if he took the test or not, because he would be going to jail either way. Thereafter, Respondent refused to take the test.

Pursuant to this refusal, Officer Whitcomb completed a Notice of Suspension, and Sponar's driving privileges were suspended. Sponar requested an implied consent hearing and appealed the suspension of his driving privileges to DPS's Office of Administrative Hearings. Sponar argued at the hearing that Officer Whitcomb's statement—he would go to jail whether he took the test or not—had the effect of distorting his implied consent rights. He contended, because his implied consent rights were not properly given, the suspension should be reversed. On March 12, 2001, the administrative hearing officer issued an order sustaining the suspension. She noted the officer had read Sponar his rights verbatim, Sponar indicated he understood his rights, and it was only after that, while waiting during the observation period, that Sponar began questioning the officer about what would happen to him and Officer Whitcomb responded he would be taken to jail as part of their procedure whether he submitted to the test or not.

Respondent then appealed the hearing officer's ruling to the circuit court, which issued an order reversing the decision of the hearing officer. The circuit court judge noted, pursuant to S.C.Code Ann. § 1–23–380(a)(6), the court may reverse the decision of the administrative agency "if substantial rights of the Petitioner have been prejudiced for various reasons, including violations of constitutional or statutory provisions, errors of law, or arbitrariness or capriciousness." He deter-

mined, because § 56–5–2950(b)(1) of the South Carolina Code provides in pertinent part that if the alcohol level at the time of testing is "five one-hundredths of one percent or less, it is conclusively presumed that the person was not under the influence of alcohol," there was no legal basis to support the officer's statement to Sponar that he "was to be jailed 'by law' regardless of his decision to submit to the breath test." S.C.Code Ann. § 56–5–2950(b)(1) (Supp.2003). He reasoned that if Sponar fell within this provision, the officer would have lacked probable cause to detain him for driving under the influence. Accordingly, the circuit court judge found the officer's instructions were erroneous and unlawfully suggested Sponar's decision to submit to the breath test "would largely be in vain." DPS argues this ruling was in error. We agree.

## STANDARD OF REVIEW

Appeals from administrative agencies are governed by the Administrative Procedures Act (APA). *Byerly Hosp. v. South Carolina State Health & Human Servs. Fin. Comm'n,* 319 S.C. 225, 229, 460 S.E.2d 383, 385 (1995). The standard the circuit court uses to review such decisions is provided by section 1–23–380(6):

> The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (a) in violation of constitutional or statutory provisions;
>
> (b) in excess of the statutory authority of the agency;
>
> (c) made upon unlawful procedure;
>
> (d) affected by other error of law;
>
> (e) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or
>
> (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C.Code Ann. § 1–23–380(A)(6) (Supp.2003). In reviewing a final decision of an administrative agency, the circuit court

essentially sits as an appellate court to review alleged errors committed by the agency. *Kiawah Resort Assocs. v. South Carolina Tax Comm'n,* 318 S.C. 502, 505, 458 S.E.2d 542, 544 (1995). An abuse of discretion occurs when a decision is controlled by an error of law or is without evidentiary support. *Mictronics v. South Carolina Dep't of Revenue,* 345 S.C. 506, 510, 548 S.E.2d 223, 225 (Ct.App.2001).

## LAW/ANALYSIS

DPS argues the circuit court improperly applied the standard of review under the APA in reversing the decision of the administrative hearing officer. We agree.

The license to operate a motor vehicle upon the public highways of this state is not a property right, but is a mere privilege subject to reasonable regulations under the police power in the interest of the public safety and welfare. Such privilege is always subject to revocation or suspension for any cause relating to public safety. However, the privilege cannot be revoked arbitrarily or capriciously.

*Summersell v. South Carolina Dep't of Pub. Safety,* 334 S.C. 357, 366, 513 S.E.2d 619, 624 (Ct.App.1999) (citations omitted), *vacated in part on other grounds,* 337 S.C. 19, 522 S.E.2d 144 (1999).

At the hearing before the circuit court, Sponar's attorney argued that Sponar was improperly given his implied consent rights such that he was coerced into not taking the breath test. He asserted, had Sponar taken the test and obtained a reading below .05%, the police would have had no basis to continue his incarceration. Thus, he contended, because Sponar was told he was going to jail regardless of whether he submitted to the test, Sponar was coerced into not taking the test. The attorney for DPS countered that Sponar was not coerced in any way. He contended that some officers take the position that once an individual is arrested for DUI, that person is already under arrest and cannot be "un-arrest[ed]." Thus, this officer merely told Sponar the "truth" about the policy they followed.

In reversing the suspension, the circuit court determined there was no legal basis to support the officer's statement to Sponar that he "was to be jailed 'by law' regardless of his

decision to submit to the breath test." It relied on our Supreme Court's opinion in *Town of Mount Pleasant v. Shaw,* 315 S.C. 111, 432 S.E.2d 450 (1993) in finding the implied consent instructions given to Sponar were erroneous. In that case, Shaw was arrested and charged with DUI. Prior to administration of a breath test, Shaw was informed that if he did not take the test, his privilege to drive in South Carolina would be suspended for a ninety-day period. Shaw took the test, registering a .25% blood alcohol reading. Shaw appealed his subsequent magistrate court conviction and the circuit court reversed holding the implied consent advisory did not adequately inform him of his option to refuse the test. The Supreme Court reversed the circuit court and reinstated Shaw's conviction. In doing so, the court noted a common sense reading of the advisory given to Shaw made clear the consequences of both taking the test and refusing to take the test. *Id.* at 113, 432 S.E.2d at 451. The court went on to adopt the following rule:

[I]f the arrested person is *reasonably informed* of his rights, duties and obligations under our implied consent law and he is *neither tricked nor misled* into thinking he has no right to refuse the test to determine the alcohol content in his blood, urine or breath, the test will generally be held admissible.

*Id.* at 113, 432 S.E.2d at 451 (emphasis in original) (citation omitted).

Shortly after the *Shaw* decision, our Supreme Court addressed the sufficiency of an implied consent advisory following the suspension of the driver's license of an individual who refused a breathalyzer test after his arrest for DUI. In *Percy v. South Carolina Dep't of Highways and Pub. Transp.,* 315 S.C. 383, 434 S.E.2d 264 (1993), Percy, who was licensed to drive in Ohio, was advised Ohio authorities would be advised of any South Carolina suspension for refusal to submit to a breath test. The arresting officer further advised Percy he was unaware of the consequences in Ohio of a refusal to take the test in South Carolina. Percy refused the breathalyzer, resulting in a ninety-day suspension in South Carolina and a one-year suspension in Ohio. Percy had his South Carolina suspension reversed by the circuit court, based on his assertion that the implied consent warning was insufficient in that it

did not contain information that Ohio would honor the South Carolina suspension. Our Supreme Court reversed and reinstated Percy's suspension, stating "[t]he statute requires only that an accused be advised that his privilege to drive will be suspended for 90 days if he refuses the breathalyzer." *Id.* at 385, 434 S.E.2d at 265. Noting the court's recent recognition in *Shaw* that an implied consent advisory is sufficient if the defendant is reasonably informed of his rights and is neither tricked nor misled into thinking he has no right to refuse the test, the court determined it would be unreasonable to require law enforcement to advise out-of-state motorists of the consequences that refusal to take the test will have in their respective states. Accordingly, the court found Percy was adequately advised pursuant to the implied consent statute. *Id.* at 385, 434 S.E.2d at 265–66.

We find the officer's statement to Sponar that he would be going to jail regardless of his decision on whether to submit to the breath test did not inadequately advise Sponar pursuant to the implied consent statute. First, § 56–5–2950(b)(1) provides that one is conclusively presumed to not be under the influence of *alcohol* if his or her breath test registers .05% or lower. Such a result does not rule out the possibility that the individual is under the influence of some other intoxicant, or a combination of alcohol and another intoxicant. Indeed, an individual may fail field sobriety tests and/or exhibit other signs of being under the influence of an intoxicant regardless of whether the individual does not have enough alcohol in his or her system to register as being under the influence of alcohol.

Second, the attorney for DPS represented to the court that different officers and law enforcement agencies take different approaches, but that once an individual is arrested for DUI, some officers and agencies continue to detain the person, regardless of whether they blow below .05 on a breath test. Further, the record shows that at the administrative hearing, Officer Whitcomb testified, "Even if [Sponar] blew below a zero point five, he was still under arrest and would be taken (sic) the county jail." Thus, it appears that as a matter of policy, officers often do not release an individual, regardless of whether the breath test results show an individual is conclusively presumed to not be under the influence of alcohol.

Even if we assumed for the sake of argument that it is improper for authorities to continue to detain an individual after they have registered below a .05% on a breath test, this is irrelevant to an individual's decision on whether to submit to a breath test.[3] Officer Whitcomb's statement to Sponar in this regard was simply a truthful explanation of what would happen to him next, and it is irrelevant as to whether continued detention in such a situation would be lawful.

Finally, the statements made by Officer Whitcomb to Sponar did not "trick or mislead" Sponar into refusing the breath test. Such a statement indicated that his decision, either way, would be of no consequence to his subsequent immediate incarceration. Officer Whitcomb explicitly indicated to Sponar that his decision on whether to take the breath test would have no impact on whether he would be jailed. Indeed, the only statement made by the officer to Sponar that could reasonably be said to have affected Sponar's decision on whether or not to take the breath test was that his license would be suspended for a ninety-day period if he refused the test. The authorities are required by law to inform an individual of this consequence before they may administer such a test.[4] A common sense reading of the advisory given to Sponar made clear the consequences of both taking the test and refusing to take the test. He was reasonably informed of his rights, duties and obligations, and was not tricked or misled into thinking he had no right to refuse the test. *Shaw*, 315 S.C. at 113, 432 S.E.2d at 451. Neither was he tricked or misled into refusing the test.

Because we reverse the trial court's decision on this ground, DPS's remaining argument need not be addressed. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613,

---

3. As noted by Sponar's attorney in argument before the circuit court, if the authorities continued to incarcerate an individual for DUI under such circumstances, that individual's recourse may be a civil action for false imprisonment or false arrest.

4. *See* S.C.Code Ann. § 56–5–2950(a)(1) (Supp.2003) ("No tests may be administered or samples obtained unless the person has been informed in writing that: (1) he does not have to take the test or give the samples, but that his privilege to drive must be suspended or denied for at least ninety days if he refuses to submit to the tests and that his refusal may be used against him in court.").

518 S.E.2d 591, 598 (1999) (appellate court need not address remaining issues when disposition of prior issue is dispositive).

Accordingly, the circuit court's decision is reversed and the suspension is reinstated.

**REVERSED.**

ANDERSON and KITTREDGE, JJ., concur.