613 S.E.2d 544

**S.C. DEPARTMENT OF MOTOR VEHICLES (formerly Public Safety), Appellant,**

v.

**Danny Joe NELSON, Respondent.**

**No. 3991.**

Court of Appeals of South Carolina.

Submitted May 1, 2005.

Decided May 23, 2005.

---

2. We decide this case without oral argument pursuant to Rule 215, SCACR.

Patrick M. Teague, and Frank L. Valenta, Jr., of Columbia, for Appellant.

Danny Joe Nelson, of Fountain Inn, Pro Se Respondent.

ANDERSON, J.

Danny Joe Nelson was arrested for driving under the influence. Nelson refused to consent to a breath test offered nearly five hours after his arrest. As a result, the South

Carolina Department of Motor Vehicles (the Department), formerly the Department of Public Safety, suspended Nelson's driver's license. The circuit court reversed, finding the Department failed to videotape Nelson's breath test within three hours of arrest as required by law. The Department appeals the circuit court's decision. We reverse.[1]

## FACTUAL/PROCEDURAL BACKGROUND

On December 10, 2002, Deputy Jason Wilson of the Spartanburg County Sheriff's Department was on routine patrol in Duncan, South Carolina. He observed a vehicle driving erratically and crossing back and forth over the center line. The car, which Nelson was driving, turned left onto Berry Shoals Road and attempted to make a U-turn. Deputy Wilson stopped the vehicle. He found that Nelson's speech was slurred and he smelled of alcohol. Nelson admitted he had been drinking. Deputy Wilson asked Nelson to get out of the car, and he conducted several field sobriety tests, which Nelson failed.

Nelson was placed under arrest at 8:36 p.m. for driving under the influence. Deputy Wilson read Nelson his Miranda rights and his section 56–5–2934 advisement and placed him in the patrol car. Officer Piggins arrived at the scene at that time. Nelson began complaining of asthma and asked for his inhaler. Deputy Wilson was unable to locate an inhaler in Nelson's car, but he did find an open bottle of vodka and four other open bottles of liquor. An ambulance was called to the scene; the emergency medical technician checked Nelson and reported that he was fine.

Deputy Wilson took Nelson to the Detention Center, but had to leave him with Officer Piggins because Wilson's house was on fire. While Deputy Wilson was gone, Nelson again complained of asthma and asked to be taken to the hospital. Officer Piggins complied with Nelson's request.

When they returned to the Detention Center, Nelson was offered a DataMaster test. Officer K.D. Green advised Nelson of his implied consent rights both orally and in writing and

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

told Nelson that the testing was being videotaped. The machine was working properly, and Officer Green followed procedure in preparing to administer the test. At 1:20 a.m., Nelson refused to give a sample.

Deputy Wilson returned to the Detention Center and found Nelson again complaining of asthma and requesting a blood test. Deputy Wilson transported Nelson to the hospital a second time, but the hospital refused to conduct a blood test because Nelson did not have cash to pay for it.

The Department suspended Nelson's driver's license. Nelson requested an administrative hearing pursuant to S.C.Code Ann. section 56–5–2951(B) (Supp.2002). The hearing officer upheld the suspension in accordance with S.C.Code Ann. section 56–5–2951 (Supp.2002) for failure to consent to drug and alcohol testing. The circuit court reversed, concluding the breath test was not offered within three hours of arrest as required by section 56–5–2953 (Supp.2002).

## STANDARD OF REVIEW

■ The South Carolina Administrative Procedures Act, S.C.Code Ann. sections 1–23–310 to –400 (2005), establishes the "substantial evidence" rule as the standard for judicial review of a decision of an administrative agency. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306–07 (1981). Section 1–23–380(A)(6) of the South Carolina Code (2005) provides as follows:

> The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (a) in violation of constitutional or statutory provisions;
>
> (b) in excess of the statutory authority of the agency;
>
> (c) made upon unlawful procedure;
>
> (d) affected by other error of law;
>
> (e) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

■■■■■ The findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence. *Kearse v. State Health & Human Servs. Fin. Comm'n,* 318 S.C. 198, 200, 456 S.E.2d 892, 893 (1995); *Broughton v. South of the Border,* 336 S.C. 488, 496, 520 S.E.2d 634, 637 (Ct.App.1999). "A court may not substitute its judgment for that of an agency as to the weight of the evidence on questions of fact unless the agency's findings are clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." *Summersell v. South Carolina Dept. of Public Safety,* 334 S.C. 357, 363, 513 S.E.2d 619, 622 (Ct.App.1999), *vacated in part on other grounds,* 337 S.C. 19, 522 S.E.2d 144 (1999); *accord Rodney v. Michelin Tire Corp.,* 320 S.C. 515, 519, 466 S.E.2d 357, 359 (1996); *Hargrove v. Titan Textile Co.,* 360 S.C. 276, 289, 599 S.E.2d 604, 610 (Ct.App.2004). Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action. *Miller v. State Roofing Co.,* 312 S.C. 452, 454, 441 S.E.2d 323, 324–25 (1994); *Stokes v. First Nat'l Bank,* 306 S.C. 46, 50, 410 S.E.2d 248, 251 (1991); *see also Palmetto Alliance, Inc. v. South Carolina Public Serv. Comm'n,* 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984) (declaring that substantial evidence is something less than weight of evidence and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence). In reviewing a final decision of an administrative agency, the circuit court essentially sits as an appellate court to review alleged errors committed by the agency. *Kiawah Resort Assocs. v. South Carolina Tax Comm'n,* 318 S.C. 502, 505, 458 S.E.2d 542, 544 (1995); *see also Byerly Hosp. v. South Carolina State Health and Human Servs. Finance Comm'n,* 319 S.C. 225, 229, 460 S.E.2d 383, 385–86 (1995) (holding that a decision of an administrative agency must be affirmed if it is supported by substantial evidence, and a reviewing court may

not substitute its judgment for that of the agency on questions of fact).

## LAW/ANALYSIS

### I. Implied Consent Statute

■ The issue in this case is whether the failure to comply with the videotaping requirements of section 56–5–2953 precludes the Department from suspending Nelson's license for his refusal to submit to a breath test under section 56–5–2950.

■ "Pursuant to § 56–5–2950, a person driving a motor vehicle in South Carolina is deemed to have consented to a chemical test of his breath, blood, or urine if arrested for an offense arising out of acts alleged to have been committed while under the influence of alcohol, drugs, or a combination of the two." *State v. Long*, 363 S.C. 360, 362, 610 S.E.2d 809, 811 (2005). South Carolina Code Annotated section 56–5–2950 (Supp.2002) [2] provides:

(a) A person who drives a motor vehicle in this State is considered to have given consent to chemical tests of his breath, blood, or urine for the purpose of determining the presence of alcohol or drugs or the combination of alcohol and drugs if arrested for an offense arising out of acts alleged to have been committed while the person was driving a motor vehicle while under the influence of alcohol, drugs, or a combination of both of them. A breath test must be administered at the direction of a law enforcement officer who has arrested a person for driving a motor vehicle in this State while under the influence of alcohol, drugs, or a combination of them. At the direction of the arresting officer, the person first must be offered a breath test to determine the person's alcohol concentration. If the person is physically unable to provide an acceptable breath sample because he has an injured mouth or is unconscious or dead, or for any other reason considered acceptable by the licensed medical personnel, the arresting officer may request a blood sample to be taken. If the officer has reasonable grounds to believe that the person is under the

---

**2.** Act No. 61, 2003 S.C. Acts 674, amended sections 56–5–2950,—2951, and—2953. These amendments are not relevant to this case.

influence of drugs other than alcohol, the officer may order that a urine sample be taken for testing. If the alcohol concentration is ten one-hundredths of one percent or above, the officer may not require additional tests of the person as provided in this chapter. The breath test must be administered by a person trained and certified by the department, pursuant to SLED policies. The arresting officer may administer the tests if the person's conduct during the twenty-minute pre-test waiting period is video-taped pursuant to Section 56–5–2953(A)(2)(d). Before the breath test is administered, a ten one-hundredths of one percent simulator test must be performed and the result must reflect a reading between 0.095 percent and 0.105 percent. Blood and urine samples must be obtained by physicians licensed by the State Board of Medical Examiners, registered nurses licensed by the State Board of Nursing, and other medical personnel trained to obtain the samples in a licensed medical facility. Blood and urine samples must be obtained and handled in accordance with procedures approved by SLED.

No test may be administered or samples obtained unless the person has been informed in writing that:

(1) he does not have to take the test or give the samples but that **his privilege to drive *must* be suspended or denied for at least ninety days if he refuses to submit to the tests** and that his refusal may be used against him in court;

(2) his privilege to drive must be suspended for at least thirty days if he takes the tests or gives the samples and has an alcohol concentration of fifteen one-hundredths of one percent or more;

. . . .

(Emphasis added.)

Section 56–5–2951, S.C.Code Ann. (Supp.2002), reads:

(A) **The Department of Public Safety *shall* suspend the driver's license, permit, or nonresident operating privilege of or deny the issuance of a license or permit to a person who drives a motor vehicle and refuses to submit to a test provided for in Section 56–5–2950** or has an alcohol concentration of fifteen one-hundredths of one

percent or more. The arresting officer shall issue a notice of suspension which is effective beginning on the date of the alleged violation of Section 56–5–2930, 56–5–2933, or 56–5–2945.

(Emphasis added.)

Both section 56–5–2950 and –2951 use unqualified, mandatory language. An operator of a motor vehicle in South Carolina is not required to submit to alcohol or drug testing; however, our legislature has clearly mandated that should one choose not to consent to such testing, his or her license must and shall be suspended for at least ninety days.

■ The implied consent laws are driven by public policy considerations. The State has a strong interest in maintaining safe highways and roads. One way to accomplish this goal is to enact laws directed at minimizing drunk driving. By providing for implied consent testing, our legislature struck a balance, allowing law enforcement to test and prosecute suspected drunk drivers while protecting individuals from such tests, should they choose to refuse them. As stated by this Court in *Sponar v. South Carolina Department of Public Safety,* 361 S.C. 35, 603 S.E.2d 412 (Ct.App.2004):

The license to operate a motor vehicle upon the public highways of this state is not a property right, but is a mere privilege subject to reasonable regulations under the police power in the interest of the public safety and welfare. Such privilege is always subject to revocation or suspension for any cause relating to public safety.

*Id.* at 39, 603 S.E.2d at 415; *accord State v. Collins,* 253 S.C. 358, 361, 170 S.E.2d 667, 668 (1969); *South Carolina State Hwy. Dep't v. Harbin,* 226 S.C. 585, 595, 86 S.E.2d 466, 470 (1955). Were drivers free to refuse alcohol and drug testing without suffering penalty, the current system of detecting, testing, and prosecuting drunk drivers would simply fail. Consequently, the legislature imposed a minimum ninety-day suspension for refusal to consent to testing where the driver has no prior DUI-related convictions. This ninety-day suspension is substantially more severe than the thirty-day suspension imposed upon a person who takes a test and has an alcohol concentration of fifteen one-hundredths of one percent or more with no prior convictions. *Compare* S.C.Code Ann.

56–5–2951(K)(1)(a) (Supp.2002) *with* S.C.Code Ann. 56–5–2951(K)(1)(b) (Supp.2002). The disparity in suspensions demonstrates the legislative concern over an individuals refusal to consent to testing.

The requirements for suspension for refusal to consent are: (1) a person (2) operating a motor vehicle (3) in South Carolina (4) be arrested for an offense arising out of acts alleged to have been committed while the person was driving under the influence of alcohol, drugs, or both, and (5) refuse to submit to alcohol and drug testing. *See* S.C.Code §§ 56–5–2950 and –2951 (Supp.2002). Those statutory predicates are present here. Therefore, the circuit court's reversal of Nelson's suspension was erroneous.

The circuit court correctly noted the Department did not comply with section 56–5–2953. That section provides:

(A) A person who violates Section 56–5–2930, 56–5–2933, or 56–5–2945 shall have his conduct at the incident site and the breath test site videotaped.

. . . .

(2) The videotaping at the breath site:

(a) must be completed within three hours of the person's arrest for a violation of Section 56–5–2930, 56–5–2933, or 56–5–2945 or a probable cause determination that the person violated Section 56–5–2945, unless compliance is not possible because the person needs emergency medical treatment considered necessary by licensed medical personnel;

. . . .

(B) Nothing in this section may be construed as prohibiting the introduction of other evidence in the trial of a violation of Section 56–5–2930, 56–5–2933, or 56–5–2945. Failure by the arresting officer to produce the videotapes required by this section is not alone a ground for dismissal of any charge made pursuant to Section 56–5–2930, 56–5–2933, or 56–5–2945 if the arresting officer submits a sworn affidavit certifying that the videotape equipment at the time of the arrest, probable cause determination, or breath test device was in an inoperable condition, stating reasonable efforts have been made to maintain the equipment in an operable condition, and certifying that there was no other

operable breath test facility available in the county or, in the alternative, submits a sworn affidavit certifying that it was physically impossible to produce the videotape because the person needed emergency medical treatment, or exigent circumstances existed.... Nothing in this section prohibits the court from considering any other valid reason for the failure to produce the videotape based upon the totality of the circumstances, nor do the provisions of this section prohibit the person from offering evidence relating to the arresting law enforcement officer's failure to produce the videotape.

. . . .

S.C.Code Ann. § 56–5–2953 (Supp.2002).

The Department concedes it did not comply with the requirements of section 56–5–2953. The breath test was not conducted within three hours of Nelson's arrest. Moreover, the arresting officer did not submit a sworn affidavit stating that the videotape equipment was inoperable, or that it was physically impossible to produce the videotape because of the need for medical treatment or other exigent circumstances. However, nothing in the code instructs that a failure to comply with section 56–5–2953 warrants the dismissal of prosecution for failure to submit to testing pursuant to section 56–5–2950.

Had Nelson consented to the breath test, the efficacy of a conviction for violation of section 56–5–2930 or 56–5–2933 would have been called into question. Although the test was offered after the required three hours and no affidavit was offered, the hearing officer might still have considered the totality of the circumstances and found valid reasons for the Department's failure to comply with the statute. *See* S.C.Code Ann. § 56–5–2953(B) (Supp.2002) ("Nothing in this section prohibits the court from considering any other valid reason for the failure to produce the videotape based upon the totality of the circumstances[.]"). In the instant case, the hearing officer may have found that Nelson himself created the dilemma by repeatedly requesting treatment—especially because medical personnel apparently found Nelson did not need assistance. However, as Nelson withheld his consent under section 56–5–2950, the Department's noncompliance under section 56–5–2953 has no application to this case.

## II. Scope of the Administrative Hearing

The Department argues the circuit court erred by failing to adhere to the scope of the implied consent hearing as dictated by section 56–5–2951. We agree.

 The implied consent statute provides that a person must be informed in writing that "he has the right to request an administrative hearing within thirty days of the issuance of the notice of suspension[.]" S.C.Code Ann. § 56–5–2950(a)(4) (Supp.2002). This hearing is limited in its scope. Pursuant to the 2002 version of section 56–5–2951(H), the scope of the hearing must be limited to whether the person:

(1) was lawfully arrested or detained;

(2) was advised in writing of the rights enumerated in Section 56–5–2950;

(3) refused to submit to a test pursuant to Section 56–5–2950; or

(4) consented to taking the test pursuant to Section 56–5–2950, and the:

 (a) reported alcohol concentration at the time of testing was fifteen one-hundredths of one percent or more;

 (b) individual who administered the test or took samples was qualified pursuant to Section 56–5–2950;

 (c) tests administered and samples obtained were conducted pursuant to Section 56–5–2950; and

 (d) the machine was working properly.

S.C.Code Ann. § 56–5–2951(H) (Supp.2002). This limitation has been explained as follows:

[T]he question before the hearing officer was not whether the state had proved its case, but whether the arresting officer had probable cause to believe [the driver] had committed the offense of driving under the influence. This is *not* a trial in regard to the guilt or innocence of the defendant on a DUI charge. Rather, the gravamen of the administrative hearing is a determination of the efficacy and applicability of the implied consent law. The query posited to the administrative hearing officer is: did the person violate the implied consent law.

*Summersell v. Dept. of Public Safety,* 334 S.C. 357, 368–369, 513 S.E.2d 619, 625 (Ct.App.1999), *vacated in part on other ground,* 337 S.C. 19, 522 S.E.2d 144 (1999).

Because Nelson did not consent to testing, the scope of the hearing was limited to whether Nelson (1) was lawfully arrested, (2) was advised in writing of his section 56–5–2950 rights, and (3) refused to submit to a test. The hearing officer determined that Nelson had been lawfully arrested, had been advised of his rights, and had refused to submit to the test offered in accordance with section 56–5–2950. The circuit court's reversal of the hearing officer was outside the purview of the proper scope of review. Accordingly, we find the only relevant issues at the administrative hearing were not in dispute. The circuit court erred in considering the violation of the three-hour videotaping requirement. We reverse the order of the circuit court and reinstate the suspension.

## CONCLUSION

The order of the circuit court is hereby

**REVERSED.**

STILWELL and WILLIAMS, JJ., concur.